**UNITED STATES of America, Appellee,**

v.

**Donald D. LEEPER, Appellant.**

**No. 19448.**

United States Court of Appeals
Eighth Circuit.

June 30, 1969.

2.  See White v. Brennan, 1948, 307 Ky. 776, 212 S.W.2d 299, 3 A.L.R.2d 943, and annotation thereto, 3 A.L.R.2d 949.

3.  Dalbey's Estate, 1937, 326 Pa. 285, 192 A. 129; In re Jensen's Estate, 1947, 141 N.J.Eq. 222, 56 A.2d 573, aff. 142 N.J. Eq. 242, 59 A.2d 624; Gilbert v. Gaybrick, 1950, 195 Md. 297, 73 A.2d 482, 485; 3 Page on Wills § 29.139; 95 C.J.S. Wills §§ 383, 385(c); 57 Am.Jur. Wills §§ 549, 854; Annotaton, 3 A.L.R. 2d 952–957.

**124**

Robert C. Heege, Sioux Falls, S. D., for appellant.

Ronald Clabaugh, Asst. U. S. Atty., Sioux Falls, S. D., for appellee; Harold C. Doyle, U. S. Atty., on the brief.

Before BLACKMUN, GIBSON and BRIGHT, Circuit Judges.

BRIGHT, Circuit Judge.

A Minneapolis, Minnesota, taxicab driver picked up two young men near Abbott Hospital in Minneapolis at about 2:00 P.M. on April 26, 1965. The passengers said their destination was a bar in nearby St. Paul. Ten hours later, and after a terrifying trip during which the driver was forced at gunpoint to drive his "fares" through southwestern Minnesota and into South Dakota, the driver was taken from his taxicab and tied to a tree. The pasengers then drove off in

the cab. They were captured about an hour later in Sioux Falls, South Dakota.

The two young men, appellant Donald Dexter Leeper and Doyle Gene Harris, were indicted for kidnapping in violation of 18 U.S.C. § 1201.[1] Leeper, in a trial separate from that of Harris,[2] was found guilty by a jury and sentenced to twenty years imprisonment, with possibility of parole at the end of five years. In this appeal, Leeper does not deny that he had participated in the seizure and forcible transportation of the cabdriver across state lines. Rather, he asserts that he is not guilty of the charge as a matter of law because he was in an alcoholic blackout and, consequently, incapable of forming the specific intent necessary to commit the crime. Additionally, Leeper contends the trial court erroneously instructed the jury that they could base a guilty verdict on acts committed by Leeper's companion, Doyle Harris. We have examined the trial record and find that appellant's claims are without merit.

Although Leeper was only twenty-one years of age at the time of the incident, he had suffered from excessive use of alcohol for about six years. He had received treatment for chronic alcoholism at several sanitariums and hospitals most recently at Asbury Methodist Hospital between April 21 and April 24, 1965, just two days prior to the kidnapping. A drug known by the trade name Antabuse had been prescribed for him at Asbury Hospital. Antabuse is designed to discourage drinking by producing nausea and illness in one who consumes alcohol while having the drug in his system. Leeper understood that while under Antabuse therapy, he would become ill

1. 18 U.S.C. § 1201 reads in pertinent part:
   "(a) Whoever knowingly transports in interstate or foreign commerce, any person who has been unlawfully seized, confined, inveigled, decoyed, kidnaped, abducted, or carried away and held for ransom or reward or otherwise, except, in the case of a minor, by a parent thereof, shall be punished * * *."

2. Harris was incompetent to stand trial until April 18, 1968. At that time, however, he was tried, found guilty, and sentenced to not less than five nor more than fifteen years imprisonment. Leeper had pleaded guilty in September of 1965. In May of 1968, Judge Nichol vacated the sentence on the basis that the earlier guilty plea had not been a voluntary one. The trial in the court below followed in September of 1968.

if he drank a small quantity of alcohol and that he could die if he consumed a large quantity. Leeper testified that he left Asbury Hospital intending to commit suicide through a combination of Antabuse and liquor. He recalled going to a nearby bar in Minneapolis where he drank a double shot of whiskey. Although he also recalled experiencing a headache, he asserts that he did not remember subsequent events until he found himself in the South Dakota jail three days later.

In support of his defense that he was legally incapable of committing the crime, Leeper called Dr. A. N. Bessesen, Jr., who specialized in treating alcoholics and had been Leeper's attending physician at Asbury Hospital, and Dr. Richard B. Leander, a qualified psychiatrist from Sioux Falls, South Dakota, who had examined Leeper about three years after the kidnapping. Dr. Bessesen described Leeper's physical condition as being "pretty good when he left Asbury Hospital". It was his opinion, however, that after the first drink, Leeper had gone on a drinking spree and had blacked out. Such an alcoholic blackout, though permitting the person to perform physical acts, would produce an amnesia concerning them. He concluded that Leeper was probably not conscious of the nature of the acts which he had committed.

Dr. Leander testified that Leeper was not psychotic at the time of his examination. He described the defendant as having a disorder (sociopathic or antisocial) personality. Underlying that personality trait and his alcohol addiction was a "schizophrenic process". Dr. Leander also said that Leeper suffered from a chemical reaction of alcohol and the cortical cells or gray matter of the brain. The reaction produced a condition known as "wet brain", which is an absorption of fluid from the blood vessels into the brain causing blackout or amnesia. A person in this condition is unable to realize and appreciate the nature and consequences of his acts. Dr.

Leander was of the opinion that the drinking, combined with the underlying schizophrenia, could produce psychotic behavior on Leeper's part. The psychiatrist testified that Leeper did not have the capacity to appreciate the nature and consequences of the kidnapping.

The government's case consisted of direct testimony concerning Leeper's actions on April 26, 1965, as well as opinion evidence relating to the defendant's mental condition and the probable effect of alcohol on his brain. It was not disputed that on April 26, prior to entering the taxicab, Leeper had purchased a pistol at a Minneapolis pawnshop. Neither Leeper nor Harris, who accompanied him into the shop, appeared intoxicated. Witnesses who observed Leeper during the day indicated that, while he appeared to have been drinking, he did not exhibit signs of severe intoxication. The direct testimony, while suggesting that Leeper's actions were unusual, perhaps even bizarre, does not require the finding that they were uncontrolled. He participated in forcing the cabdriver to give up his money and rings and frequently gave instructions to the driver. He and Harris constantly threatened the driver with death should he fail to cooperate. Either Leeper or Harris fired the pistol on several occasions: in the cab while traveling to St. Paul, from the cab toward road signs during the trip through Minnesota (once with the pistol held against the driver's neck), and at the outside light located on the roof of the taxicab. Stops were made during the trip to purchase liquor, gasoline and food. At Windom, Minnesota, they halted long enough for Leeper to attempt to seek out a friend living there. Near the South Dakota border, Leeper and Harris discussed the possibility of federal imprisonment if they crossed the state line. The pair were seen driving the cab in Sioux Falls, South Dakota, by a law officer who gave pursuit and participated in an exchange of pistol fire with Leeper who was then driving. Finally, Leeper and Harris were found hiding underneath a rail-

road car after having abandoned the cab in a warehouse area of the city.

The government produced expert testimony concerning Leeper's mental capacity to commit the alleged crime. Dr. J. F. Alderete, a psychiatrist with the United States Public Health Service, reported on Leeper's mental and physical condition on the basis of an examination made at the Medical Center for Federal Prisoners at Springfield, Missouri, in 1965. His testimony regarding Leeper's basic mental condition was similar to that reported by Dr. Leander. Leeper was found to have above-average intelligence.

Dr. Alderete disagreed with Dr. Leander's conclusions concerning Leeper's awareness of and responsibility for his actions on April 26, 1969. Dr. Alderete noted that an electroencephalogram and psychological testing revealed no evidence of structural brain damage. This, he said, negated the possibility of "wet brain" which is normally accompanied by brain damage. He felt that it would be extremely unlikely for Leeper to have had an amnesic episode lasting three days. It was his opinion that Leeper was not so intoxicated as to be unable to form the intent to commit the crime, that he was able to distinguish right from wrong, that he knew the nature and consequences of his acts, and that he was not the victim of an irresistible impulse. Dr. Alderete, in analyzing some of the specific occurrences on which he based his opinion, testified:

"[One of the] specific instances that would suggest that he knew the nature and quality and consequences of his act would be the fact that he made threats to blow the cab driver's brains out. A person that knew the nature and quality and consequences of his act would know that blowing the brains out of a person would cause them to cease to exist, to die, and a person that did not know the nature

and quality and consequences of his acts would not know this.

There's another inference of knowing the nature and quality of the act, is the firing of the firearm in a direction away for the individual concerned, that is, a person would be aware that the pistol could produce harm. A person who did not know the nature and quality of an act might hold the gun with the barrell pointing towards him.

I think some of those are the highlights of knowing the nature and quality and consequences of the act."

Dr. Alderete also referred to the purchase of the pistol, the tying of the driver, and Leeper's running away and hiding from the police as examples of purposeful actions which supported his opinion that Leeper knew right from wrong.

The record discloses that appellant's expert, Dr. Leander, could not correlate some of Leeper's conduct with his medical opinion that Leeper had a continuing blackout. Dr. Leander explained that Leeper, at particular times, seemingly "had an awareness of what he was doing or where he was going or what was happening".

To a degree, the defendant's testimony that he intended to kill himself by drinking alcohol while the Antabuse was in his system was impeached by the testimony of Dr. Bessesen that Leeper must not have taken the Antabuse tablets since he would not have been able to tolerate the alcohol he claims to have drunk immediately prior to the blackout.[3]

In considering the sufficiency of the evidence to support a verdict in a criminal case, we are required to view the evidence most favorably to the prevailing party. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); United States v. Lodwick, 410

---

3. Dr. Bessesen suggested that a patient, though having an Antabuse tablet placed in his mouth by a nurse, might avoid taking the tablet, which dissolves very slowly, by not swallowing it and then disposing of it later.

F.2d 1202, (8th Cir., 1969); United States v. Kye, 411 F.2d 120 (8th Cir., 1969); Kayser v. United States, 394 F.2d 601, 604 (8th Cir. 1968), cert. denied, 393 U.S. 919, 89 S.Ct. 250, 21 L.Ed.2d 206 (1968). There is no doubt that the trial court properly submitted the issue of appellant's criminal responsibility to the jury and did so with appropriate instructions which are not questioned on this appeal. Judge Blackmun's perceptive observations in Dusky v. United States, 295 F.2d 743 (8th Cir. 1961), cert. denied, 368 U.S. 998, 82 S.Ct. 625, 7 L.Ed.2d 536 (1962), are applicable to the evidence in this record:

> "We cannot conclude, as we must in order to remove this case from the jury's consideration, that on the basis of the evidence here 'reasonable men must necessarily possess a reasonable doubt as to defendant's sanity and that reasonable men must conclude that the government has failed to sustain its burden of proving beyond a reasonable doubt that the accused had the capacity to commit the crime'. United States v. Westerhausen, supra, 7 Cir., 1960, at page 852 of 283 F.2d. This compels an affirmance of the judgment of the trial court." 295 F.2d at 756.

■ In Mason v. United States, 402 F.2d 732 (8th Cir. 1968), we considered the criminal responsibility of a defendant who, like Leeper, had a sociopathic personality, was addicted to alcohol, and contended that the proof submitted by the government was insufficient to sustain his conviction for a crime of specific intent. We held that lay testimony, together with the conflicting opinions of psychiatrists presented by both sides, justified submission of the case to the jury. See also, Iyotte v. United States, 402 F.2d 698 (8th Cir. 1968), cert. denied, 394 U.S. 936, 89 S.Ct. 1214, 22 L.Ed.2d 468 (1969); Kayser v. United States, *supra*; Kaufman v. United States, 350 F.2d 408 (8th Cir. 1965), cert. denied, 383 U.S. 951, 86 S.Ct. 1211, 16 L.Ed.2d 212 (1966). We are required to so hold in this case.

We also find no error in the trial court's instruction to the jury on aiding and abetting. It was taken almost verbatim from 18 U.S.C. § 2, and read as follows:

> "Whoever commits an offense against the United States or willfully aids, abets, counsels, commands, induces, or procures its commission, is punishable as a principal, and whoever causes an act to be done, which if performed by him or another would be an offense against the United States, is punishable as a principal. Every person who thus willfully participates in the commission of a crime may be found guilty of that offense."

■ The defendant, who was charged as a principal, contends that the jury could have found him guilty of aiding and abetting with which he was not charged. Although one is charged as a principal and not specifically as an aider and abetter, the charge may be supported by proof that he aided and abetted in the commission of the felony. United States v. Francisco, 410 F.2d 1283 (8th Cir., 1969); Latham v. United States, 407 F.2d 1, 4 (8th Cir. 1969); Theriault v. United States, 401 F.2d 79, 85 (8th Cir. 1968), cert. denied, 393 U.S. 1100, 89 S.Ct. 898, 21 L.Ed.2d 792 (1969); Nassif v. United States, 370 F.2d 147, 155 (8th Cir. 1966).

Affirmed.