**UNITED STATES of America,
Appellee,**

v.

**Ben Thie SCHULTZ, Appellant.**

**No. 19809.**

United States Court of Appeals,
Eighth Circuit.

July 17, 1970.

Gregory D. O'Shea, St. Louis, Mo., for appellant and filed brief.

William C. Martin, Asst. U. S., Atty., St. Louis, Mo., for appellee; Daniel Bartlett, Jr., U. S. Atty., and Jim J. Shoemake, Asst. U. S. Atty., filed brief of appellee.

Before MEHAFFY, HEANEY and BRIGHT, Circuit Judges.

BRIGHT, Circuit Judge.

Ben Thie Schultz, an indigent person convicted by a jury of robbing an insured savings and loan association located in St. Louis, Missouri, and sentenced to a term of twenty years in the federal penitentiary, appeals his conviction.[1] Schultz contends, principally, that the

---

1. The conviction arises under 18 U.S.C. § 2113(a).

trial court erred in denying him the benefit of obtaining an examination and testimony from an independent psychiatrist for the purpose of supporting his defense of lack of requisite mental competency to have knowingly committed the acts constituting the alleged crime. We hold the facts in this record establish Schultz' entitlement to such services under the pertinent statute, 18 U.S.C. § 3006A(e), a part of the Criminal Justice Act of 1964. Accordingly, we reverse and order that Schultz be retried.

The robbery of the Jefferson Savings and Loan Association occurred on January 16, 1969. Federal agents arrested Schultz as the lone suspect of the crime on the following day. Upon Schultz filing an appropriate affidavit of indigency under the Act, counsel was appointed to represent him. Thereafter, on February 7, the federal prosecutor moved, pursuant to the provisions of 18 U.S.C. § 4244, for a judicial determination of Schultz' competency to stand trial, reciting in the motion that the accused "may be presently insane or otherwise so mentally incompetent as to be unable to understand the proceeding against him or properly assist in his own defense". The motion specified:

(1) The accused had been confined and treated at a St. Louis mental hospital for mental illnesses in April of 1957, September of 1957 and during the months of June to mid-August of 1967;

(2) The United States Army, in 1947, diagnosed Schultz as possessing an anti-social, emotionally-unstable personality;

(3) The United States Army discharged Schultz in 1948 for demonstrating undesirable habits and traits of character; and

(4) The accused had been convicted of robbing the same savings and loan association in 1957 and upon his apprehension on that occasion had stated that he expected the police to be at the location of the robbery and to shoot and kill him as he was "no good".

The trial court granted the government's motion and directed that Schultz be taken to the United States Medical Center at Springfield, Missouri, for a period not to exceed ninety days for the purpose of assessing his competency to stand trial. Physicians affiliated with the Federal Medical Center staff found Schultz "to be oriented as to time, place and person" and exhibiting no thinking disorder. At an arraignment on May 2, 1969, the trial judge, having this report in his possession, found Schultz competent to stand trial. Defendant's counsel voiced no objection to this finding.

Shortly thereafter, Schultz' counsel requested the court to appoint competent medical experts for the purpose of examining Schultz in order to provide a basis for possible testimony in defense of the prosecution. The trial court denied this request.

On this appeal, we examine this denial within the framework of the Criminal Justice Act, which, as pertinent, reads:

(e) Services other than counsel.—Counsel for a defendant who is financially unable to obtain investigative, expert, or other services necessary to an adequate defense in his case may request them in an ex parte application. Upon finding, after appropriate inquiry in an ex parte proceeding, that the services are necessary and that the defendant is financially unable to obtain them, the court shall authorize counsel to obtain the services on behalf of the defendant. 18 U.S.C. § 3006A(e).

These provisions enunciate a two-prong test: (1) The accused must satisfy the court that financial inability prevents him from obtaining the services he requests; and (2) The accused must show need for such services to present an adequate defense.[2]

2. President John F. Kennedy, in transmitting proposals for this type of legislation to Congress, wrote House Speaker John McCormack of the great need for such enactment:

In the typical criminal case the resources of government are pitted against those of the individual. To guarantee a fair trial under such circumstances requires that each accused

Our concern here focuses only on the second requirement. This appeal appears to us as a case of first impression since we have found no similar case in which the federal courts of appeal have considered a situation in which the trial court has denied with finality an accused's request for subdivision (e) services.

In considering the resolution of the issue before us, we review the information available to the trial court at the time it considered Schultz' request. The application presented by Schultz' counsel for subdivision (e) services made reference to the earlier action of the court authorizing a § 4244 competency examination, advised the court that Schultz intended to raise an insanity defense at the trial, notified the court that Schultz continued to show some bizarre symptoms including a suicide attempt on May 14 and referred specially to the psychiatric report of the Federal Medical Center, which counsel characterized as indicating that defendant suffered "from mental disease and illness".

The Federal Medical Center in its report noted an impression of "sociopathic personality" concerning Schultz. This report additionally revealed: (a) The accused claimed a long history of mental illness requiring medical and psychiatric examination and treatment; (b) The Federal Medical Center independently verified that Schultz had been diagnosed a "manic depressive" and had exhibited bizarre behavior while hospitalized for mental illness less than two years earlier;[3] (c) Schultz, in describing his activity on the day of the crime, stated that his memory was clouded, that he had been drinking alcoholic beverages all day and that he had "no connection" with the robbery; and (d) The accused seemed calmly amazed and somewhat unconcerned over the gravity of the situation in which he found himself.[4]

No standard can be arbitrarily articulated covering all circumstances under which an accused demonstrates his entitlement under the Act to services of experts to present an adequate defense. Trial counsel, of course, makes his request in the context of pretrial investigation of the circumstances surrounding an alleged crime. The discretion possessed by the district court would appear to be somewhat narrower

person have ample opportunity to gather evidence, and prepare and present his cause. Whenever the lack of money prevents a defendant from securing an experienced lawyer, trained investigator or technical expert, an unjust conviction may follow. 2 U.S.Cong. & Admin. News p. 2993 (1964).

3. This Medical Center report as part of Schultz' history, recited:
He stated that he has been in mental hospitals on many occasions and his narrative describes his stays as major with severe illnesses and radical treatment. Most of his admissions were at Malcolm Bliss in St. Louis, where he described treatment involving shock therapy and major tranquilization. Records obtained from Malcolm Bliss belie this fact and show eight admissions, with the longest stay of nine days, and the rest stays of one to two days. Each followed a threat of suicide, threat of homocide (sic), alcoholism, or drug abuse. He was regarded at all times as a sociopathic personality with alcoholism or drug abuse. He was admitted to Malcolm Bliss on June 21, 1967 and discharged with the diagnosis of manic depressive, mixed type. Only on this admission was he treated with a major tranquilizer, which was Thorazine. He was also given 10 electroshock treatments on this admission.

4. Schultz related to the staff psychiatrists that he had been "framed" by federal officers; that these officers charged him with robbery because of the lack of any other suspect. In making this statement, Schultz, however, acknowledged to the staff psychiatrist that he knew that federal authorities possessed photographs identifying him as within the savings and loan association at the time and place of the alleged robbery. (A teller, by handing currency over to the "robber", activated hidden cameras which filmed part of the incident. Positive prints developed from these films afforded a basis for witnesses, as well as the jury by comparison with other photographs of Schultz, to positively identify Schultz as a participant.)

than its power under Fed.R.Crim.P. 17(b), the rule by which a federal district court may authorize a financially pressed defendant to produce witnesses necessary for trial through subpoena at governmental expense. In evaluating a 17(b) request, the trial court may consider the nature and effect of the evidence proposed by the defendant— whether material or not, whether cumulative in nature or not. The trial court possesses a broad discretion to grant or deny a 17(b) application. See Slawek v. United States, 413 F.2d 957 (8th Cir. 1969); Terlikowski v. United States, 379 F.2d 501 (8th Cir.), cert. denied, 389 U.S. 1008, 88 S.Ct. 569, 19 L.Ed.2d 604 (1967); Feguer v. United States, 302 F.2d 214 (8th Cir.), cert. denied, 371 U.S. 872, 83 S.Ct. 123, 9 L.Ed.2d 110 (1962); Reistroffer v. United States, 258 F.2d 379 (8th Cir. 1958), cert. denied, 358 U.S. 927, 79 S.Ct. 313, 3 L.Ed. 2d 301, rehearing denied, 361 U.S. 856 80 S.Ct. 42, 4 L.Ed.2d 96 (1959). In our view, the courts ought to apply a more lenient standard in determining the need for services of experts in preparation for trial than that applied under 17(b).

Two cases have grappled with the periphery of the problem before us, but not with its core. The Tenth Circuit, in Christian v. United States, 398 F.2d 517 (1968), determined that the trial court's *delay* in furnishing the accused with an expert to investigate the facts surrounding the alleged crime pending completion of a medical examination of the accused at the Federal Medical Center at Springfield, Missouri, did not constitute reversible error in the absence of any showing of prejudice to the accused. Judge Murrah's opinion refers to the interrelated responsibility between defense counsel and the trial court in assuring a defendant a fair opportunity to prepare and present his defense to a criminal charge. The accused's counsel bears the primary responsibility to determine if subsection (e) services "will be necessary"; while the trial judge must ap-

prove the request and "articulate the reasons therefor". 398 F.2d at 519.

This circuit, in Ray v. United States, 367 F.2d (8th Cir. 1966), cert. denied, 386 U.S. 913, 87 S.Ct. 863, 17 L. Ed.2d 785 (1967), considered whether the action of the trial court, in appointing defendant's retained counsel as an attorney under the Criminal Justice Act during the course of the trial, operated to prejudice the defendant by depriving him of an opportunity to obtain handwriting and fingerprint experts. Judge Lay, writing for the court, emphasized that counsel for an accused bears great responsibility to assure his client of a fair trial within the context of the adversary system. The failure of counsel, otherwise shown to be competent on the record, to request subdivision (e) services either before or during trial dispelled any notion that the accused suffered any prejudice or an inadequate defense to the charge.

In evaluating whether the trial court need authorize subdivision (e) services for an accused, we also consider cases relating to a conversely analogous factual situation, one in which the government upon learning that the accused intends to rely on an insanity defense seeks to have the accused examined by a psychiatrist of the government's choosing. In Pope v. United States, 372 F.2d 710 (8th Cir. 1967), vacated on other grounds, 392 U.S. 651, 88 S.Ct. 2145, 20 L.Ed.2d 1317 (1968), Judge Blackmun, writing for an en banc court, affirmed the power of the trial court to order the accused to submit to such an examination. The opinion noted:

It would be a strange situation, indeed, if, first, the government is to be compelled to afford the defense ample psychiatric service and evidence at government expense and, second, if the government is to have the burden of proof, as it does with the competency issue in the case * * * and yet it is to be denied the opportunity to have its own corresponding and verifying examination, a step which per-

haps is the most trustworthy means of attempting to meet that burden. * * *

While we have recognized that expert medical opinion may not always be an essential on the government side of a competency issue, * * * it is certainly advisable and to be encouraged as an important factor in the ascertainment of the truth. (Citations omitted.) 372 F.2d at 720.

A panel of this court later reiterated these same views in Alexander v. United States, 380 F.2d 33, 39 (8th Cir. 1967).

In a criminal trial, the issue of mental competency, like most other issues, is presented to the jury in an adversary context. This language, which we have quoted from the *Pope* case illustrates the obvious—the adversary system cannot work successfully unless each party may fairly utilize the tool of expert medical knowledge to assist in the presentation of this issue to the jury. See United States v. Albright, 388 F.2d 719 (4th Cir. 1968).

We think a lawyer representing an accused confronted with facts such as submitted in Schultz' motion would inevitably consider and explore the possibility of a defense based on the defendant's lack of criminal responsibility. The circumstances here appear to be as strong, if not stronger, than the underlying factual elements present in several recent cases in which defendant's counsel presented an insanity defense supported by psychiatric testimony. E. g., United States v. Leeper, 413 F.2d 123 (8th Cir. 1969) (kidnapping—bizarre behavior); Mason v. United States, 402 F.2d 732 (8th Cir. 1968), cert. denied, 394 U.S. 950, 89 S.Ct. 1288, 22 L.Ed.2d 484 (1969) (bank robbery—sociopathic personality); Iyotte v. United States, 402 F.2d 698 (8th Cir. 1968), cert. denied, 394 U.S. 936, 89 S.Ct. 1214, 22 L.Ed.2d 468 (1969) (homicide—drinking, possible head injury).

While a trial court need not authorize an expenditure under subdivision (e) for a mere "fishing expedition",[5] it should not withhold its authority when underlying facts reasonably suggest that further exploration may prove beneficial to the accused in the development of a defense to the charge. Considering the purpose of § 3006A(e) of the Criminal Justice Act to provide the accused with a fair opportunity to prepare and present his case, the application of the accused's counsel for such services must be evaluated on a standard of reasonableness. We need not explore the full dimensions of the standard to be applied to the statute. When, however, an accused's counsel learns of facts, such as in this case, indicating that his client has acted bizarrely, has been hospitalized as a mental patient on several occasions and has been diagnosed as a manic depressive, all within the recent past, that attorney

5. Records of expenditures for investigative, expert and other services under the Criminal Justice Act of 1964 demonstrate no apparent abuse of the privilege granted to defendants to employ such services. Through December 31, 1969, all payments for services of every kind including attorneys' services aggregated $12,762,665.00. The amount spent for investigative, expert and other services amounted to $216,339.00. Expenditures for these services have been increasing substantially over the years. The following is a comparison of the cost of these services during fiscal years 1966 through 1969:

| | F.Y. 1966 | F.Y. 1967 | F.Y. 1968 | F.Y. 1969 |
|---|---|---|---|---|
| Investigators | $ 8,610 | $20,368 | $25,906 | $35,283 |
| Psychiatrists | 11,498 | 15,322 | 22,844 | 22,256 |
| Interpreters | 516 | 3,302 | 5,296 | 9,212 |
| Other | 5,663 | 7,547 | 11,251 | 11,465 |
| Grand Totals | $26,287 | $46,539 | $65,297 | $78,216 |

(Data from January 28, 1970, report of Deputy Director of the Administrative Office of the United States Courts to the Judicial Conference Committee to Implement the Criminal Justice Act.)

acquires a reasonable basis upon which to investigate the competency of his client to commit the crime charged against him. The trial court must apply the same standard of reasonableness to the facts presented to it. Application of this standard to the facts in this case demonstrates Schultz' entitlement to the requested services.

An examination of the trial record fortifies our view that Schultz needed independent psychiatric assistance to prepare for trial and that he sustained prejudice through his inability to fully explore his insanity defense. The trial court submitted the competence issue to the jury, which found against Schultz. Schultz' counsel offered and the court received medical records of Schultz' hospitalizations and treatment in a St. Louis, Missouri, mental hospital. Schultz then called Dr. Donald Johnston, the staff physician who had examined the accused at the Federal Medical Center. Dr. Johnston possessed limited background and training in the field of mental illness. He denied that Schultz was incompetent at the time of his examination or on the date of the crime. He did admit to the possibility that Schultz' prior manic depresssive psychosis might have reoccurred and impaired Schultz' competency. Such later testimony obviously carries little, if any, probative weight.

Schultz, in fact, never had the benefit of any psychiatric examination or evaluation directly related to his defense of insanity. True, the Federal Medical Center physicians examined him to determine his competency to stand trial, but a substantial difference may exist between the mental state which permits an accused to be tried and that which permits him to be held responsible for a crime. United States v. Driscoll, 399 F. 2d 135 (2d Cir. 1968). Examination for the purpose of competency to stand trial may require less exactness than those examinations designed to determine sanity for the purpose of criminal responsibility. *Driscoll, supra*; Winn v. United States, 106 U.S.App.D.C. 133, 270 F.2d 326 (1959), cert. denied, 365 U.S. 848, 81 S.Ct. 810, 5 L.Ed.2d 812 (1961). See *Alexander, supra,* 380 F.2d 33, 38. Cf. Tarvestad v. United States, 418 F.2d 1043, 1051 (8th Cir. 1969), cert. denied, 397 U.S. 935, 90 S.Ct. 944, 25 L.Ed.2d 116 (1970).

Our reading of the record in the case satisfies us that the ruling of the trial court denied Schultz the opportunity to present a meaningful defense based on lack of criminal responsibility. We cannot say that Schultz will improve his position on that issue in the event of a new trial. We do say that he is at least entitled to the opportunity to try.

■ Schultz also contends on this appeal that the government failed to sustain its burden of proof of guilt in presenting its case in chief by failing to submit any evidence that Schultz was sane at the time of the commission of the crime. This contention lacks merit. In order to initiate the government's burden to prove beyond a reasonable doubt the accused's criminal responsibility, the defendant must offer some evidence at the trial indicating that the accused lacked mental competency at the time of the offense, or the accused must have shown by pretrial procedure that he had been adjudicated incompetent at some earlier time. *Tarvestad, supra,* 418 F.2d 1043. Neither of these circumstances existed during the presentation of the government's case.

The accused also complains concerning the foundation identification for an exhibit, a document purporting to be the note which Schultz presented to the teller reciting: "I have a gun, turn over the money, any attempt, otherwise, will cost lives." We have review the record. The testimonial foundation sufficed to establish a reasonable basis upon which the trial court could and did admit this exhibit into evidence.

Though this record convincingly establishes that Schultz committed the acts forming the basis of the indictment, this record also discloses that he had an

inadequate opportunity to defend on the issue of insanity.

Reversed.

MEHAFFY, Circuit Judge (concurring).

In concurring with the result reached by the majority, I want to emphasize that cases such as this must each turn on the particular facts involved, and, as noted by Judge Bright, "no standard can be arbitrarily articulated covering all circumstances under which an accused demonstrates his entitlement under the [Criminal Justice] Act to services of experts to present an adequate defense."

The majority is of the opinion, based on the record in this case, that a new trial is necessary to assure a fair trial for defendant. It is indeed a close question as to whether the facts supporting defendant's request for appointment of a medical expert for an additional examination are sufficiently compelling to justify this court in substituting its judgment for that of the trial court which is authorized in the first instance to make a determination. The district court possesses broad discretion in this matter as it should have, and I am fearful that the decision of the majority may be used as a basis to unduly limit the district court's broad discretion. It is only because of the strong feeling of the majority heretofore mentioned and a combination of a number of factors which are present that I have concluded that defendant should have been permitted another psychiatric examination.

In the first place, commitment to the Medical Center at Springfield was for the specific purpose of determining whether "the defendant is presently insane or otherwise so mentally incompetent as to be unable to understand the proceedings against him and to assist in his own defense." Consequently, when the three members of the Neuropsychiatric Staff examined defendant and unanimously found that he was competent, this finding pertained to his competency to stand trial and not to his competency at the time of the alleged crime. The

test to be used in determining whether defendant has sufficient mental capacity to stand trial is whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding of the proceedings against him. Wheeler v. United States, 404 F.2d 252, 254 (8th Cir. 1968); Butler v. United States, 384 F.2d 522, 523 (8th Cir. 1967). A finding of competency to stand trial does not therefore necessarily indicate competency at the time of the commission of the alleged offense.

In view of the fact that defendant had a long history of mental illness, including manic depression, the fact that the Medical Center had not been asked by the court to determine his competency at the time of the commission of the crime, and the further fact that it was his intention to raise the insanity defense at the trial—the success of which depended almost entirely upon the presentation of expert testimony—I am led to the conclusion from the above and other record facts that an additional psychiatric evaluation was a reasonable request and probably necessary in order for defendant to be able to prepare an adequate defense.