THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* JACK INDIA, Appellant.

Second Department, January 24, 1972.

*Robert Kasanof* (*Malvine Nathanson* of counsel), for appellant.

*Eugene Gold, District Attorney* (*William I. Siegel* of counsel), for respondent.

BENJAMIN, J.   These appeals are by the defendant from (1) a judgment of the Supreme Court, Kings County, rendered December 11, 1969, resentencing him, pursuant to *People* v. *Montgomery* (24 N Y 2d 130), upon a 1960 conviction, on his guilty plea, of robbery in the first degree, grand larceny in the first degree, burglary in the second degree and two counts of assault in the second degree; and (2) an order of the same court, dated June 22, 1970, which, on a *coram nobis* application, denied vacatur of the judgment of resentence.   The resentence, *nunc pro tunc* as of October 10, 1960 (the date of the original sentence) was the same as the original sentence, namely, consecutive prison terms of 15 to 30 years on the robbery count and 5 to 10 years on the burglary count and prison terms of 5 to 10 years on the larceny count and 2½ to 5 years on each of the assault counts, the latter three terms to be concurrent with the term on the robbery count.

The crime committed by the defendant in 1960 was a shocking one and he has never denied he committed it.   Before he pleaded guilty he was examined and found competent to stand trial. When the psychiatrists' report was submitted to the court for confirmation, the defendant's retained, experienced counsel controverted it by oral argument, but specifically declined the court's offer of a hearing on the issue of the defendant's competency to stand trial.   The court confirmed the report and the defendant then pleaded guilty to the entire indictment.*

At no time during the plea proceedings or prior thereto did the defendant or his retained counsel request the assistance of an independent psychiatrist, paid by the State, to help him controvert the finding that he was competent to stand trial. Throughout that time neither the defendant nor his retained counsel said that the defendant lacked funds to retain an independent psychiatrist and that if he had the funds he would retain a psychiatrist and then demand a hearing to controvert the finding of his competency to stand trial.

Two months after the defendant pleaded guilty, when he was arraigned for sentence, his retained attorney for the first time made a passing comment that the defendant lacked the funds

---

* There was another, similar indictment pending simultaneously; the plea did not cover it.   The presentence probation report indicates that the defendant had been positively identified as the perpetrator of eight other similar crimes and had been partially identified as the perpetrator of 12 more.   These facts may, perhaps, explain the defendant's willingness to plead guilty to this entire indictment.

for an independent psychiatric examination and he [counsel] would have recommended such examination if the defendant had the funds. This bare assertion of the defendant's indigency, by his *retained* (and presumably compensated) attorney, is not otherwise supported in the record. And, once again, neither the defendant nor his retained attorney requested an independent psychiatric examination, at the State's expense, or a hearing on the issue of his competency to stand trial. After a strong plea for clemency, the court then imposed the same sentences as were imposed on the later resentence.

The defendant did not appeal from the judgment, but he thereafter made several attacks on it by postjudgment proceedings; in none of them did he claim he was not competent to stand trial when he pleaded guilty. In 1969 he made a *coram nobis* application to vacate the judgment on the ground he had been deprived of his right to appeal from the judgment; he did not then say he was incompetent when he pleaded guilty. At about the same time he made another *coram nobis* application on various other grounds; but, again, he did not say he was incompetent when he pleaded guilty. When arraigned for resentence, after *Montgomery* relief had been granted, he voiced several objections to the judgment, but again did not say he was incompetent when he pleaded guilty in 1960.

Now, for the first time, 11 years after he pleaded guilty, the defendant urges that we should vacate his guilty plea because he was not competent when he made it; or that we should at least remand the case for a hearing as to whether he was then competent to make that plea, on the theory that the court's failure to give him the assistance of a State-paid, independent psychiatrist, in 1960, to controvert the report of his competency violated his constitutional rights. We disagree and on this record believe he is not entitled to that relief.

In 1960 there was no statutory provision authorizing a defendant (except in a capital case) to retain experts for his defense at the public's expense, as section 722-c of the County Law was not enacted until 1965 (L. 1965, ch. 878, § 1). Nor was there then any case law conferring that right. And we know of no controlling case, since 1960, that has held that an indigent defendant has a constitutional right to the assistance of an independent psychiatrist, or other expert, at the public's expense. None of the cases relied on by the defendant, and cited in the dissenting opinion, have gone that far; and they are, moreover, readily distinguishable from the case at bar.

Thus, *Gideon* v. *Wainwright* (372 U. S. 335), *Douglas* v. *California* (372 U. S. 353) and *Lane* v. *Brown* (372 U. S. 477) all

involved the right to counsel. In *Bradford* v. *United States* (413 F. 2d 467), *United States* v. *Schultz* (431 F. 2d 907) and *United States* v. *Theriault* (440 F. 2d 713) there were prompt, direct appeals from the judgments; the defendants had requested the assistance of independent experts, to be paid by the government; and the appellate rulings in their favor were bottomed on a Federal statute (U. S. Code, tit. 18, § 3006A, subd. [e]) which gives the Federal courts discretionary power to permit a defendant to employ an independent expert, paid by the government, to assist in his defense.

In *Jacobs* v. *United States* (350 F. 2d 571) the defendant moved to vacate his guilty plea only a few weeks after he was sentenced, on the ground that he was incompetent when he pleaded guilty, and he requested the assistance of an independent, government-paid psychiatrist at the hearing on his motion; his request was refused; the motion to vacate the plea was denied; and he appealed. While these proceedings were taking place, the above-mentioned Federal statute was enacted, but it did not take effect until after the argument of the appeal. By a 2-to-1 vote, the appellate court reversed, the majority holding that the lower court should have appointed an independent psychiatrist, at government expense, to assist the defendant; the decision did not refer to the above-mentioned recently enacted statute authorizing such appointments of experts; it did not say there had been a violation of the defendant's constitutional rights; and it predicated its holding on "the interest of justice" (p. 573). The dissenting Circuit Judge merely said that the lower court's decision was a discretionary one and that he saw no abuse of discretion.

Far different from the above-described cases is the one at bar. Here, there was no statutory authority for a State-paid, independent psychiatrist to assist a defendant in 1960, when this defendant pleaded guilty. Here, the contention that the defendant's rights were violated by the failure to afford him a State-paid psychiatrist is being raised for the first time 11 years after he pleaded guilty; and it was not raised on any of a number of prior applications. Here, a present remand for a hearing on the defendant's competency to stand trial in 1960 would be a mere mockery, as it obviously would be impossible to determine *now* what his mental condition was 11 years ago. Here, there was no request to the trial court for an independent psychiatrist, at the State's expense. Here, the defendant's retained, experienced counsel waived his right to a hearing on the issue of competency to stand trial. Here, there was no real showing of

indigency; and the only reference to it was a passing comment by the defendant's retained counsel some months after the defendant pleaded guilty.

In sum, we find no warrant for the relief sought by the defendant in either the Federal or State Constitutions or in the statutes or in case law; nor, on this record, do the interests of justice require it.

We have examined the defendant's other contentions and find no merit in them. The judgment and the order should be affirmed.

SHAPIRO, J. (dissenting). These appeals come to us as the result of the defendant's resentence on December 11, 1969 pursuant to the mandate of *People* v. *Montgomery* (24 N Y 2d 130). The defendant was originally sentenced on October 10, 1960, following his plea of guilty. That plea was interposed to the crimes charged (none of the five counts was reduced) and the defendant was sentenced to a total term of 20 to 40 years.

Prior to his interposition of the plea of guilty, the defendant was sent to Kings County Hospital for examination as to his sanity. Two psychiatrists diagnosed his condition as "chronic brain syndrome associated with brain trauma — cerebral contusion — behavioral reaction", but concluded that he was "presently not insane" and that he was capable of understanding the charges against him and of making his defense. The psychiatrists' report noted that the defendant "laughed it off" when told that he faced a 60-year prison term, indicating that he thought his attorney was confused. The defendant had sustained a severe brain concussion in an automobile accident on March 13, 1959. His family stated that his behavior had deteriorated following the accident. However, the psychiatrists found no symptoms of organic brain injury.

Defense counsel sought to controvert the report and indicated to the court that the accident had resulted in serious changes in the defendant's characteristics and behavior. After defense counsel outlined his reasons for disagreement with the report, the court asked him, "Assuming what you say is right, what is your position? Do you wish to have a hearing on this sanity proceeding or do you just want to state your position and let me make a decision?" Defense counsel replied, "I just wish to state my position and let you make a decision." Despite this, defense counsel thereupon continued to review the defendant's psychiatric history for the court and indicated that during the defendant's confinement at Kings County Hospital one of the psychiatrists told him he had reason to believe that the defend-

ant was not sane.* The court, without any proof before it other than the psychiatrists' ex parte report, thereupon found the defendant to be sane and confirmed the report.

On the date of sentence defense counsel again indicated his disagreement with the psychiatric report, noted that the defendant was not possessed of sufficient funds for an independent psychiatric examination and stated his opinion that the defendant, as a result of the accident, was not in possession of all of his mental faculties.

I agree with the defendant's contention that his inability to procure the assistance of independent psychiatrists to controvert the psychiatric report deprived him of a basic constitutional right solely as the result of his indigency. The defendant was originally sentenced some five years before the enactment of section 722-c of the County Law, which authorizes the procurement of expert services at public expense. Hence, a formal motion for such relief would have been an exercise in futility. The court was nonetheless apprised of the need for such expert services, of the defendant's inability to pay for them and of the fact that a hearing would have been demanded had the defendant been able to procure the aid of psychiatric experts.

Both the equal protection and due process clauses of the Fourteenth Amendment to the Constitution of the United States emphasize that all persons accused of crime must be treated equally and may not, because of their poverty, be deprived of benefits which are provided to others (*Griffin* v. *Illinois*, 351 U. S. 12, 17). Hence, indigent persons, as a fundamental right essential to a fair trial, have the right to the assistance of counsel in criminal cases (*Gideon* v. *Wainwright*, 372 U. S. 335), to the assistance of counsel on direct appeal from judgments of conviction (*Douglas* v. *California*, 372 U. S. 353) and to the assistance of counsel on appeal when collaterally attacking such judgments by writ of error *coram nobis* (*Lane* v. *Brown*, 372 U. S. 477).

A similar result should follow in this case where, solely because of his indigency, the defendant was unable to retain a psychiatrist as a witness and thus properly litigate the issue of his competency. As a substantial question had arisen as to the question of the defendant's competency, it was discriminatory not to have appointed a psychiatrist at public expense (*Jacobs* v.

---

* Section 662-a of the Code of Criminal Procedure provides, in pertinent part: " If either counsel for the defendant or the district attorney does not accept the findings of the psychiatrists and wishes to contravert [*sic*] them, the court shall afford counsel for the defendant and the district attorney opportunity to do so before him." The record herein clearly establishes that defense counsel did not accept the findings of the psychiatrist and wished to controvert them.

*United States,* 350 F. 2d 571, 573; see, also, *Bradford* v. *United States,* 413 F. 2d 467; *Lee* v. *Habib,* 424 F. 2d 891, 899; *United States* v. *Schultz,* 431 F. 2d 907, 911; *United States* v. *Theriault,* 440 F. 2d 713).

The failure to demand a hearing as to the defendant's competency to stand trial was a result of indigency and not of a trial strategy (cf. *People* v. *Baxter,* 32 A D 2d 840). The defendant did not receive an advantageous plea for he pleaded guilty as indicted to the five counts of the indictment. I would therefore remand the case to the Criminal Term for a hearing as to the defendant's competency to stand trial on August 2, 1960, the date of his plea of guilty.

MUNDER, Acting P. J., LATHAM and CHRIST, JJ., concur with BENJAMIN, J.; SHAPIRO, J., dissents and votes to remand the case to the Criminal Term for a hearing as to defendant's competency to stand trial on August 2, 1960, the date of his plea of guilty.

Judgment of the Supreme Court, Kings County, rendered December 11, 1969 on resentence, and order of the same court dated June 22, 1970, affirmed.