# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 04-2553

———————

United States of America,

        Plaintiff-Appellee,

v.

Marcus Malcom Thurmon,
also known as Freak,

        Defendant-Appellant.

Appeal from the United States
District Court for the
Northern District of Iowa.

———————

Submitted: December 15, 2004
Filed: July 6, 2005

———————

Before BYE, HANSEN, and GRUENDER, Circuit Judges.

———————

BYE, Circuit Judge.

Marcus Thurmon was convicted of distributing 27.41 grams of a detectable amount of cocaine base after a prior drug felony conviction, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 851. The district court[1] sentenced Thurmon to 30 years' imprisonment under the career offender provision of the United States Sentencing Guidelines. U.S.S.G. § 4B1.1. Thurmon appeals his conviction and sentence. Thurmon argues the district court abused its discretion by denying his

———————

[1]The Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa.

motion for the appointment of a voice recognition expert. He challenges his sentence pursuant to <u>Blakely v. Washington</u>, 542 U.S. 296 (2004), and <u>United States v. Booker</u>, 125 S. Ct. 738 (2005). We affirm both the conviction and sentence.

I

In March 2002, law enforcement officers worked with a confidential informant, Eric Beard, to set up a controlled buy of cocaine base, otherwise known as "crack cocaine," from Thurmon. Beard knew Thurmon because both had been housed together for three months in 2000 at a jail in Iowa. On March 27, Beard called Thurmon and arranged the purchase of an ounce of crack cocaine. Officers fitted Beard with recording and monitoring devices. Beard then made a recorded and monitored telephone call to a cell phone registered to Thurmon. During the call, Beard and Thurmon agreed to meet at a Super Target store in Cedar Rapids, Iowa.

At the Super Target, officers monitored and recorded the purchase on audio and video tapes. Beard was provided with $1,000 in pre-serialized funds. At approximately 4:23 p.m., a blue-green four-door Cadillac with temporary plates arrived at the Super Target parking lot. An unidentified female was driving the Cadillac. Thurmon sat in the front passenger seat. After Beard climbed into the backseat of the Cadillac, surveillance officers monitored the Cadillac while it was driven around the parking lot and adjacent streets. Inside the Cadillac, Thurmon handed Beard 27.41 grams of cocaine base in a Newport cigarette box and took the pre-serialized funds from Beard. Throughout the transaction, Beard referred to Thurmon by his nickname "Freak," a nickname which Thurmon has tattooed across his back. After the Cadillac returned to the parking lot, Beard exited. Beard then turned over the Newport cigarette box and recording equipment to the officers. After the Cadillac left the Super Target, it was driven to an apartment complex where Thurmon exited the vehicle and walked into an apartment building. He was not apprehended by the police at that time.

On July 22, 2003, the government filed an indictment against Thurmon charging him on one count of distributing approximately 27.41 grams of a detectable amount of cocaine base after a prior drug felony conviction. Prior to trial, Thurmon filed an ex parte motion for the appointment of a voice identification expert, which the district court denied.

At trial, Beard testified he identified and recognized the passenger in the front seat of the Cadillac as Thurmon. Additionally, a police officer, who had at least three prior encounters with Thurmon, testified he was able to identify Thurmon when the Cadillac passed the officer's vehicle. Thurmon's ex-girlfriend, Tina Bennett, also testified at trial that she could identify Thurmon as the passenger of the vehicle from the videotape of the controlled buy. It was revealed Bennett was romantically involved with Beard at the time the trial was taking place.

Thurmon did not testify, but called several witnesses. Thurmon's girlfriend, Nakisha Roberts, testified Thurmon was living in Iowa City during the transaction and he had been with her at her pre-natal doctor's appointment the afternoon of the controlled buy. The doctor's office's records indicated Roberts arrived for her appointment on March 27, 2002, shortly before 2:00 p.m. The records did not indicate whether Thurmon was with Roberts. The doctor spent approximately 15 to 20 minutes with Roberts during the appointment. Roberts testified she and Thurmon then returned to her apartment in Coralville, Iowa, shortly before the elementary school let out. The controlled buy took place at 4:23 p.m. the same day at a location 30 miles from Roberts's apartment.

Thurmon also called as a witness the apartment manager of the building to which the Cadillac was driven after the controlled buy. The apartment manager testified Thurmon did not have an ownership interest in any unit in the building. Thurmon's friend Robert Roberts, who made rap music with Thurmon, testified he was familiar with Thurmon's voice and did not believe it was Thurmon's voice on the

police recordings. On October 28, 2003, after a two-day trial, the jury returned a guilty verdict.

At the sentencing hearing, on June 15, 2004, Thurmon stipulated he qualified as a career offender under U.S.S.G. § 4B1.1. In light of the stipulation, the parties agreed any remaining contested issues such as drug quantity and role in the offense were moot. The district court determined Thurmon's total adjusted offense level was 37, criminal history category VI, and that the applicable sentencing range was 360 months to life in prison. The district court imposed a sentence of 360 months' imprisonment, eight years of supervised release, and a $100 special assessment.

II

Thurmon argues the district court denied him the effective assistance of trial counsel by erroneously denying his request for a voice identification expert to review the audiotapes gathered by the police. Although Thurmon characterizes this claim as a denial of the right to the effective assistance of counsel, we believe Thurmon's claim is more appropriately viewed as an argument that the district court violated the Criminal Justice Act. Section 3006A(e)(1) of the Criminal Justice Act provides:

> Counsel for a person who is financially unable to obtain investigative, expert, or other services necessary for adequate representation may request them in an ex parte application. Upon finding, after appropriate inquiry in an ex parte proceeding, that the services are necessary and that the person is financially unable to obtain them, the court, or the United States magistrate judge if the services are required in connection with a matter over which he has jurisdiction, shall authorize counsel to obtain the services.

18 U.S.C. § 3006A(e)(1).

It is Thurmon's burden to establish an expert is necessary for an adequate defense. United States v. Bertling, 370 F.3d 818, 819 (8th Cir. 2004) (citing United States v. Valverde, 846 F.2d 513, 517 (8th Cir. 1988)). In analyzing a claim that § 3006A(e)(1) was violated, we consider whether Thurmon "demonstrated a reasonable probability that the requested expert would aid in his defense and that denial of the funding would result in an unfair trial." United States v. Ross, 210 F.3d 916, 921 (8th Cir. 2000) (citing Little v. Armontrout, 835 F.2d 1240, 1244 (8th Cir. 1987) (en banc)). We review the district court's ruling pertaining to the funding of an expert witness under § 3006A(e) for an abuse of discretion. Id. (citing United States v. Casal, 915 F.2d 1225, 1230 (8th Cir. 1990)).

Before the district court, Thurmon argued he needed a voice identification expert to establish it was not his voice on the recordings. Thurmon claims the expert's testimony could have been of substantial weight to his defense because the videotapes did not clearly depict the individual in the Cadillac selling the drugs. We do not believe the district court was required to appoint a voice identification expert in this case because the facts do not reasonably suggest Thurmon was not the individual in the Cadillac at Target who sold crack cocaine to Beard. See United States v. Janis, 831 F.2d 773, 778 (8th Cir. 1987) (holding district court did not err in denying request for voice analysis expert where "underlying facts do not suggest the slightest support for [defendant's] theory of the case"). Beard, who was acquainted with Thurmon, testified Thurmon was in the Cadillac and sold him the crack cocaine. Throughout the transaction, Beard referred to Thurmon by his nickname "Freak," and the purchase was arranged by a recorded call to Thurmon's cell phone. Additionally, an officer who had three previous encounters with Thurmon testified he recognized Thurmon as the Cadillac passed the officer's vehicle. Thurmon's ex-girlfriend testified she recognized Thurmon on the videotape and his voice on the audiotapes. Although Thurmon's girlfriend testified Thurmon accompanied her to a pre-natal doctor's appointment the afternoon of the controlled

buy, the appointment was at 2:00 p.m. in the afternoon, whereas the controlled buy took place at 4:23 p.m.

Thurmon cites United States v. Schultz, 431 F.2d 907 (8th Cir. 1970), for the proposition that the district court should have relied on the judgment of his defense attorney. In Schultz, the defendant's attorney learned the defendant in the recent past had been hospitalized as a mental patient several times, was diagnosed as a manic depressive, and acted bizarrely. Defense counsel moved for the appointment of an independent psychiatrist for the purpose of developing the defense that the defendant lacked the competency to commit the crime knowingly. The district court denied the motion. We reversed. We stated "[w]hile a trial court need not authorize an expenditure under subdivision (e) for a mere 'fishing expedition,' it should not withhold its authority when underlying facts reasonably suggest that further exploration may prove beneficial to the accused in the development of a defense to the charge." Id. at 911. We held that based on the facts the defendant's attorney had learned there was a reasonable basis on which to investigate the defendant's competency, and the defendant was entitled to the appointment of an independent psychiatrist to support the defense. In the instant case, the facts did not provide Thurmon's attorney with a reasonable basis to investigate whether the voice on the audio recordings belonged to Thurmon.

Furthermore, Thurmon has not demonstrated a voice identification expert was necessary for a fair trial. Thurmon was able to present his defense through witnesses who were familiar with his voice. At trial, Robert Roberts testified it was not Thurmon's voice on the audiotapes. Thurmon was also able to cross-examine the government's witnesses who identified his voice on the audiotapes. Because Thurmon failed to show a voice identification expert would aid his defense or was necessary for a fair trial, we hold the district court did not abuse its discretion in denying Thurmon's motion for the appointment of a voice identification expert.

III

Thurmon challenges his sentence under <u>Blakely</u> and <u>Booker</u>, arguing the district court erred by sentencing him as a career offender under the Guidelines without submitting the facts necessary for the enhancement to a jury to be proved beyond a reasonable doubt.  We now know this is not the nature of a <u>Booker</u> error.  In <u>United States v. Pirani</u>, we explained the nature of the <u>Booker</u> error to include "[a]ll sentences imposed by a district court that mistakenly (though understandably) believed the Guidelines to be mandatory."  406 F.3d 543, 553 (8th Cir. 2005) (en banc).

Because Thurmon failed in the district court to raise an objection based on <u>Apprendi</u>, <u>Blakely</u>, or the Sixth Amendment, we review the claim for plain error.  <u>Pirani</u>, 406 F.3d at 550.  To establish plain error, it is Thurmon's burden to establish "(1) 'error,' (2) that is 'plain,' and (3) that 'affect[s] substantial rights.'"  <u>Johnson v. United States</u>, 520 U.S. 461, 467 (1997) (quoting <u>United States v. Olano</u>, 507 U.S. 725, 732 (1993)).  If Thurmon establishes all three factors, we may exercise our discretion to notice the forfeited error "only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings."  <u>Id.</u> (internal quotations and citations omitted).

Thurmon has established the first two plain error factors.  In <u>Booker</u>, the Supreme Court held the mandatory federal sentencing guidelines system is unconstitutional.  The district court in this case erred "by applying the Guidelines as mandatory, and the error is plain."  <u>Pirani</u>, 406 F.3d at 550.  In order to demonstrate the error affected his substantial rights, Thurmon "must show a 'reasonable probability,' based on the appellate record as a whole, that but for the error he would have a received a more favorable sentence."  <u>Id.</u> at 552.  The district court sentenced Thurmon at the bottom of the Guideline range.  However, in <u>Pirani</u>, we held "sentencing at the bottom of the range is the norm for many judges, so it is

insufficient, without more, to demonstrate a reasonable probability that the court would have imposed a lesser sentence absent the <u>Booker</u> error." <u>Id.</u> at 553. Our review of the record leads us to conclude Thurmon cannot establish the third plain error factor. Because Thurmon failed to establish the third factor, it is unnecessary to examine whether the error "seriously affects the fairness, integrity, or public reputation of judicial proceedings." <u>Id.</u>

IV

The judgment and sentence are affirmed.

_____