**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Harry William THERIAULT, Defendant-
Appellant.**

**No. 28551.**

United States Court of Appeals,
Fifth Circuit.

March 24, 1971.

Wisdom, Circuit Judge, concurred specially and filed opinion.

James W. Tarlton, III, Mobile, Ala., Court-appointed for defendant-appellant.

C. S. White-Spunner, Jr., U. S. Atty., Irwin W. Coleman, Jr., Asst. U. S. Atty., Mobile, Ala., for plaintiff-appellee.

Before RIVES, WISDOM and GOD-BOLD, Circuit Judges.

GODBOLD, Circuit Judge:

Appellant Theriault was convicted of escaping from custody while held as a federal prisoner in the city jail at Mobile, Alabama. We reverse because the trial judge erred in refusing to authorize employment at government expense of a psychiatrist to examine defendant under the provisions of 18 U.S.C. § 3006A(e).[1]

April 28, 1969, Theriault's appointed counsel filed a motion pursuant to Rule 28, Fed.R.Crim.P. and 18 U.S.C. § 4244, requesting that defendant be examined by a psychiatrist who could testify as an expert witness for the defense, to determine defendant's mental capacity at the time of the alleged offense and currently. The court granted the request by ordering that Theriault be taken before a qualified psychiatrist at the United States Penitentiary, Atlanta, Georgia, where he was imprisoned, who should examine him as to competency at the time of the offense and competency to stand trial.

Before Theriault was examined he filed an objection, again referring to Rule 28 and § 4244, alleging that, because of his employment by the government, the prison psychiatrist had an adverse interest. At the same time defendant renewed his request for examination by a psychiatrist who could testify as an expert and otherwise assist defense counsel. Before these matters were ruled on, and still prior to any examination, defendant moved under 18 U.S.C. § 3006A(e) that the court authorize defense counsel to employ a psychiatrist of Mobile, Alabama, (where Theriault's case would be tried) to examine defendant and be available to appear as an expert witness as to defendant's mental condition. The motion pointed out that defendant's indigency already had been established, and alleged that appointment of an expert as requested was necessary to an adequate defense. The motion was denied August 11 with a notation "Psychiatrist already appointed by previous order."

The psychiatrist at the Atlanta prison commenced examination of defendant July 9. On September 4 Theriault moved for reconsideration of the denial of his § 3006A(e) motion. September 9 the Atlanta psychiatrist submitted to the court his report with copies for the prosecutor and for defense counsel. His conclusion was that Theriault was not insane at the time of the offense. At the beginning of trial on September 15 the District Judge held an ex parte hearing on the motion for reconsideration and adhered to his earlier denial, pointing out that one of his reasons was the problem, while Theriault was outside the penitentiary walls, of safeguarding against his escape (Theriault had a long record of previous escapes).

At trial defendant admitted "withdrawing himself" from the jail. His principal defense was insanity. He claimed that previously he had been treated inhumanely while imprisoned at Parchman state prison in Mississippi, and that he was unable to control his impulses to escape from the Mobile jail because of his overpowering fear that he would be sent back to Parchman and again be mistreated. Also he claimed that conditions in the Mobile jail were not tolerable, contributing to his uncontrollable impulses to escape.

For testimony to support his defense of insanity Theriault relied on members of his family, prison inmates subject to easy impeachment, and the chaplain of

1. "Services other than counsel.—Counsel for a defendant who is financially unable to obtain investigative, expert, or other services necessary to an adequate defense in his case may request them in an ex parte application. Upon finding, after appropriate inquiry in an ex parte proceeding, that the services are necessary and that the defendant is financially unable to obtain them, the court shall authorize counsel to obtain the services on behalf of the defendant. * * *"

the Atlanta prison (whose testimony was not favorable to the defense). As a rebuttal witness the government employed the Atlanta prison psychiatrist, over defense objections that an examination made under § 4244 may not be employed against the defendant pleading insanity. His opinion was that defendant probably was competent at the time of the alleged offense and suffering only from "dissocial behavior."

■ The court erred in denying the § 3006A(e) motion without conducting the ex parte proceeding required by the statute.[2] Also it could not properly deny appointment of an expert sought under § 3006A(e) on the basis that an earlier appointment had been made under § 4244.[3] Sec. 4244 concerns examination to determine if the defendant is competent to stand trial. The court appoints a psychiatrist who examines the accused and reports to the court. Rule 28 authorizes the court to appoint its own expert witness, who is expected to be neutral and detached. He advises the parties of his findings. *See* Rule 28 and Wright, Federal Practice and Procedure, § 452. The § 3006A(e) expert fills a different role. He supplies expert services "necessary to an adequate defense," which embraces pretrial and trial assistance to the defense as well as availability to testify. His conclusions need not be reported to either the court or the prosecution.

■■ The impartial expert appointed under Rule 28 at the request of defense counsel to inquire into defendant's sanity is not a prosecution witness but the court's witness and he may testify as to

his findings. United States ex rel. Smith v. Baldi, 192 F.2d 540 (3d Cir.), aff'd, 344 U.S. 561, 73 S.Ct. 391, 97 L.Ed. 549 (1953). Thus the original request by Theriault's counsel, resting in part on Rule 28, made the prison psychiatrist's testimony admissible on the issue of competency at the time of the alleged offense.[4] Theriault's subsequent request for a § 3006A(e) expert to assist the defense did not deprive the court of power to proceed with the Rule 28 examination, and to use the information obtained therefrom. Defendant's objection to the prison psychiatrist based on alleged adverse interest is not tenable. The doctor was subject to cross-examination on possible interest and bias, but he was not incompetent to testify.

■ The standards to govern what is "necessary to an adequate defense" are not susceptible of arbitrary articulation but can best be developed on a case by case basis. Schultz v. United States, 431 F.2d 907 at 913 (8th Cir. 1970) (concurring opinion). Usually the appellate court will be reviewing a trial court denial of a § 3006A(e) motion in the light of only the information available to the trial court at the time it acted on the motion. But in this instance the application was denied because of the earlier appointment, and without the statutorily mandated hearing. There was no focus on necessity of an expert to prepare and present an adequate defense. On remand it will not even be necessary for the court to conduct a hearing, because at the appellate level we are in the unusual position of having before us a complete trial record, which establishes with as much clarity as one could want the necessity of a

---

2. Obviously, the ex parte hearing conducted at the beginning of the trial on the motion to reconsider the earlier denial, came too late.

3. Because in this instance the original request was made under both § 4244 and Rule 28, and, before he was examined, the defendant objected to going forward and asked for a § 3006A(e) expert, it is not necessary for us to decide whether a defendant may request appointment of an expert under Rule 28 and, after such an

expert has examined the defendant and made his opinion known, request another appointment under § 3006A(e). The functions of the two appointments are different, but the court has a responsibility to prevent abuse of the availability of appointive processes.

4. The trial judge instructed that the psychiatrist not go into competency at the time of trial, which is the § 4244 inquiry.

§ 3006A(e) psychiatric expert to assist the defense in preparing for and presenting its case at another trial. The District Court should enter an order authorizing the employment.

Numerous claims of error in admissibility of evidence either are without merit or concern matters which should not arise at another trial. The claim of a variance between the proof and the bill of particulars also can be eliminated before trial.

Reversed and remanded for further proceedings not inconsistent with this opinion.

WISDOM, Circuit Judge (concurring specially):

I concur in the judgment of the majority. But I think that we should give more aid to the district courts that must apply this statute in the future by discussing the statutory standard for government payment of defense-chosen expert assistance. The question is the meaning of the statutory criterion "necessary to an adequate defense."

The Report of the Committee to Implement the Criminal Justice Act of 1964 contains a general statement recommending

that the allowances of petitions for investigative services be strictly limited, to the extent possible, to those charges necessary in the strictest sense of the word.

Report of the Judicial Conference of the United States, 36 F.R.D. 277, 290 (1965). But the minutes of the Committee's meeting show that this suggestion applies only to investigative services. The committee members distinguished between "Investigative Services" and "Other Services", which would include psychiatric and other expert services. 36 F.R.D. at 374. And, the minutes show an explicit recognition of the importance to the defendant of independent psychiatric services:

Judge Hastings inquired about a provision in each plan (to be drawn up for district courts) for psychiatric

services, pointing out that the statute apparently is intended to give a defendant who is financially unable the same services that any other defendant might secure. The Committee considered the use of a roster of qualified psychiatrists and concluded that the defendant is entitled to the doctor whom he wants. It was suggested, however, that where practical available public facilities should be used.

36 F.R.D. at 374.

The legislative history of the statute does not contain any attempts at defining "necessary to an adequate defense" specifically. But the expressions of purpose are of some help. President Kennedy's letter transmitting the proposed legislation to the House said that

In the typical criminal case the resources of the government are pitted against those of the individual. To guarantee a fair trial under such circumstances requires that each accused person have ample opportunity to gather evidence and prepare and present his cause. Whenever the lack of money prevents a defendant from securing an experienced lawyer, trained investigator or technical expert, an unjust conviction may follow.

1964 U.S.Code Congressional and Administrative News, at 2993. The focus on an "ample opportunity to * * * prepare and present his cause" and the effort to undo the effect of a defendant's indigence reflect a purpose to give the impoverished defendant defense aids that he would use if he had adequate means. The Sixth Circuit has concluded that "the Congressional purpose in adopting the statute was to seek to place indigent defendants as nearly as may be on a level of equality with non-indigent defendants." United States v. Tate, 6 Cir. 1969, 419 F.2d 131.

A liberal reading of the statute is further impelled by constitutional policies. This Court has held that an indigent criminal defendant has a constitutional right to court-appointed experts when his case would be prejudiced by

their absence. Bradford v. United States, 5 Cir. 1969, 413 F.2d 467, 474. The criterion relied on by the court was equality between "indigents and those who possess the means to protect their rights." 413 F.2d at 474, quoting Jacobs v. United States, 4 Cir. 1965, 350 F.2d 571. The right is crucial to the working of the adversary system. It can be founded on the due process requirement of a fair administration of justice in addition to equality of rights for indigent defendants. And it is a right that goes to the very trustworthiness of the criminal justice process. If there were to be any differentiation of solicitude between defendants' rights based on values of privacy and those based on maintaining the accuracy of judicial decision making, the latter must certainly be favored. See Note, "Right to Aid in Addition to Counsel for Indigent Criminal Defendants,." 47 Minn.L.Rev. 1054 (1963). Our system of law rests on the adversary process. But in criminal cases the process cannot be expected to work unless indigent defendants are provided with reasonably adequate defense aids to offset the Government's far greater resources and far more extensive prosecutorial aids. The American Bar Association Committee on the Prosecution and Defense Functions recognizes that the proper functioning of the adversary process requires that investigative and expert services be furnished to the indigent defendant. *See* ABA Project of Minimum Standards, Providing Defense Services § 1.5 and Commentary (1967).

I would read the statute, therefore, as requiring authorization for defense services when the attorney makes a reasonable request in circumstances in which he would independently engage such services if his client had the financial means to support his defenses.[1] The trial judge should tend to rely on the judgment of the attorney, who has the primary duty of providing an adequate defense. Such reliance is recommended by the difficulty of requiring the trial judge to take an adversary view of the case. *Cf*. Alderman v. United States, 1969, 394 U.S. 165, 182, 89 S.Ct. 961, 22 L.Ed.2d 176, 192. Additionally it avoids forcing the defendant to reveal private information to the court in order to support the request for such services. Further it comes close to putting the indigent defendant in the same position as a non-indigent defendant, where the defense attorney would determine whether to engage the services. There is a limitation contained in the statute. A maximum amount of $300 is authorized for each expert. This explicit limitation reinforces our interpretation of the requirement of necessity. Congress chose an expenditure limit rather than requiring defendants to demonstrate unusual need for defense services.

I do not mean to suggest that the trial court should grant such requests automatically. For instance, the court should not allow a defendant successive authorizations for the same type of services, since this would undermine the expenditure limit contained in the statute. Nor should the trial judge authorize an obviously frivolous expenditure by the defendant. But he should have a healthy respect for the judgment of the defense attorney in making his findings of necessity.

---

1. Two other courts have formulated definitions of the statutory standard. In United States v. Schultz, 8 Cir. July 17, 1970, 431 F.2d 907, the Court said:

> While a trial court need not authorize an expenditure under subdivision (e) for a mere "fishing expedition", it should not withhold its authority when underlying facts reasonably suggest that further exploration may prove beneficial to the accused in the development of a defense to the charge.

And in United States v. Pope, D.C.Neb. 1966, 251 F.Supp. 234, 241, the Court said

> It is contemplated by the Act that counsel should be afforded the fullest opportunity to prepare their case. The rule in allowing defense services is that the Judge need only be satisfied that they reasonably appear to be necessary to *assist* counsel in their preparation, not that the defense would be defective without such testimony.

(emphasis in original.)