**UNITED STATES of America**

**v.**

**Michael L. POGANY, Appellant.**

**No. 71–1653.**

United States Court of Appeals, Third Circuit.

Argued April 21, 1972.

Decided June 30, 1972.

Alan M. Lerner, Cohen, Shapiro, Polisher, Shiekman & Cohen, Philadelphia, Pa., for appellant.

Gary Tilles, Asst. U. S. Atty., Philadelphia, Pa., for appellee.

Before ADAMS, MAX ROSENN, and HUNTER, Circuit Judges.

## OPINION OF THE COURT

HUNTER, Circuit Judge.

Michael Pogany, a registrant under the Selective Service Act of 1967, was convicted for refusing to submit to induction in violation of 50 App. U.S.C. § 462. In this appeal, eight points of error are alleged in the proceedings below. Since we agree with counsel's contention that a competency hearing should have been held prior to trial, we need not discuss the ancillary questions presented.

At the time of trial Pogany was twenty years old and a high school graduate. Although employed for short periods of time, there is considerable evidence in the record that Pogany's life style could best be characterized as deeply involved in all facets of the drug culture—apparently including the use of heroin and L. S.D. A few days after Pogany received

his notice to report for induction, his father arranged an appointment for him with Daniel Devlin—a volunteer draft counsellor. After meeting with appellant and learning of his extensive drug use, Devlin recommended that he contact a Dr. Michael Tricario, a psychiatrist specializing in the treatment of young men and women with similar problems. After some procrastination, appellant secured an appointment which, however, he subsequently failed to keep. Treatment began in late January of 1971 and Dr. Tricario so informed appellant's Board in a letter which outlined Pogany's psychological problems—specifically, his frequent desire to "escape" reality through drug use. Although Tricario recommended that appellant be seen by a Selective Service psychiatrist, no further action was taken by the Board. Pogany remained in individual treatment—albeit somewhat reluctantly—for two months. Thereafter, Tricario concluded that giv-

en the nature of Pogany's mental problems, he would be better off in a group therapy program. Here, too, Pogany was quite reluctant to participate. In addition, during this time period, Dr. Tricario referred Pogany to two other psychiatrists for examination: Dr. Michael O'Connor administered certain psychological tests and a psychiatric examination was conducted by Dr. Norman Jablon, the director of the Psychiatric Unit at Holmesburg Prison and the psychiatrist responsible for conducting competency examinations and evaluations for the Court of Common Pleas of Philadelphia.

Prior to trial, counsel filed a motion requesting that a competency hearing be held pursuant to 18 U.S.C. § 4244.[1] Attached to the motion were the psychiatric reports of Dr. Tricario and Dr. Jablon, the latter report concluding that appellant was incompetent to stand trial.[2] The Government did not object

---

1. Title 18, U.S.C., § 4244

*Mental incompetency after arrest and before trial.* Whenever after arrest and prior to the imposition of sentence or prior to the expiration of any period of probation the United States Attorney has reasonable cause to believe that a person charged with an offense against the United States may be presently insane or otherwise so mentally incompetent as to be unable to understand the proceedings against him or properly to assist in his own defense, he shall file a motion for a judicial determination of such mental competency of the accused, setting forth the ground for such belief with the trial court in which proceedings are pending. Upon such a motion or upon a similar motion in behalf of the accused, or upon its own motion, the court shall cause the accused, whether or not previously admitted to bail, to be examined as to his mental condition by at least one qualified psychiatrist, who shall report to the court. For the purpose of the examination the court may order the accused committed for such reasonable period as the court may determine to a suitable hospital or other facility to be designated by the court. If the report of the psychiatrist indicates a state of present insanity or such mental incompetency in the accused, the court shall hold a hearing, upon due notice, at which evidence as to the mental condition of the accused may be sub-

mitted, including that of the reporting psychiatrist, and make a finding with respect thereto. No statement made by the accused in the course of any examination into his sanity or mental competency provided for by this section, whether the examination shall be with or without the consent of the accused, shall be admitted in evidence against the accused on the issue of guilt in any criminal proceeding. A finding by the judge that the accused is mentally competent to stand trial shall in no way prejudice the accused in a plea of insanity as a defense to the crime charged; such finding shall not be introduced in evidence on that issue nor otherwise be brought to the notice of the jury.

2. Dr. Jablon's report reads in its entirety as follows:
Mr. Alan M. Lerner
Cohen, Shapiro, Berger,
Polisher and Cohen
22nd Floor—PSFS Building
Philadelphia, Pennsylvania 19107
Re: Michael Louis Pogany
Dear Mr. Lerner:
I have had the opportunity to interview Mr. Pogany, your client, on two occasions, I first saw him on September 16, and reexamined him on October 19 of this year. In addition, I reviewed a letter written by Dr. Tricarico, dated July 28, 1970, which described his findings after

to a § 4244 examination or to a hearing but did request that appellant be committed for its duration as permissible under the statute. No action was taken by the Court until January 4, 1971—the final call for trial—when defense counsel again moved for a judicial determination of competency, with the addition-

having treated Michael for approximately one year.

Michael explained how he was supposed to be inducted last December 8, and claimed that he believes he has now been charged with not performing a duty or with failure to comply with the military Armed Forces. He stated that he had registered for the Selective Service, had taken a physical examination and was classified I–A. In general, he offered little information, and I had to question him in a rather specific way in order to obtain definitive answers.

He appeared in neat attire, and he was quite cooperative with me during the interviews. His appearance was in keeping with the stated age of 20. He was oriented for person, place and time, and showed no memory impairment for either remote or recent events, with the exception of his describing memory distortions while under the effects of drugs in the past. He demonstrated a silly grin, which was inappropriate and was present consistently throughout the entire interview, particularly on the first occasion when I saw him. He explained this by saying, "because it's like a joke, them ordering me." He demonstrated a passive, helpless manner in dealing with his situation, and when I asked him pointedly about how he would deal with the charges that have been made against him, he explained that he could not imagine what would happen, and he went on to describe that he has never planned very much for anything. He talked of how he took drugs in the past because they were something that he liked, and he never considered the consequences.

He did not demonstrate any signs of significant anxiety, nor did he show depression. Rather, his mood seemed to be an inappropriate one of euphoria. There were no mannerisms other than the rather silly smiling and inappropriate giddiness. There was no pressure of speech, and his thoughts followed in generally coherent, logical fashion, although his explanations of the meanings of his sentences were often incomplete. When asked to interpret proverbs, he demonstrated some inability to deal adequately with abstract concepts, although he was not concrete or literal in these interpretations.

He described a past history of rather unconventional existence. Since leaving high school he became the user of a variety of illegal drugs, including marijuana, amphetamines, and LSD. He claims, however, he has stopped the use of hard drugs for some time now. He further indicated that although he felt he never had a "real bad trip," that he has gotten paranoid at times. His drug taking pattern appears to have been an effort to escape from all emotional discomfort. He claims that he has no emotional problems, and he described that he stopped taking LSD and other harder drugs because he got to the point where he did not like the fact that they controlled him, and he recognized that he was feeling "more bad than good." The history which he described to me regarding his social adjustment is in keeping with that described in the letter written by Dr. Tricarico. I would agree that Michael has demonstrated social withdrawal and an inability to relate adequately to others. I would also agree that if he is not overtly schizophrenic at present, he certainly could be described as a latent schizophrenic, who under even minimal stress, could decompensate into a more full-blown schizophrenic picture.

*Furthermore, the passive, helpless fashion in which he behaves would appear to render him incompetent to stand trial. Although he seems to understand the nature of the charges that have been brought against him, he is not likely to be able to cooperate adequately with his attorney in his own defense.*

It is my impression that he is suffering from Latent Schizophrenic illness, as manifested by inappropriate affect, some indications of a thought disorder, and a chronic attempt to escape from reality and emotional discomforts through the use of a variety of hallucinogenic drugs. In addition to this, there is the behavior pattern of submissivity and helpless passivity. Hospitalization might be of benefit if an adequate drug treatment program existed. Another alternative would be a half-way house treatment program, such as offered at Gaudenzia House. Certainly, punitive measures would be likely to foster his emotional illness. In my opinion, he is certainly not a candidate for military service. *His ability to function at this point is so impeded that I believe he could not adequately cooperate effectively with counsel in the preparation of his own defense.* (Emphasis added.)

Sincerely yours,

Norman C. Jablon, M. D.

al request that there be no actual *commitment* during the examination.[3] After a discussion between opposing counsel and the Court, an agreement was reached whereby a continuance would be granted and Pogany examined by a psychiatrist chosen by the Government. The Court then discussed the scheduling of the hearing, indicating that it would be held subsequent to this examination.[4]

On February 9, 1971, Government counsel forwarded to the trial judge the report of Lieutenant Commander R. B. Stice, M.D., a third year resident in psychiatry at the United States Naval Hospital in Philadelphia. On the basis of a single examination and in response to Government counsel's letter requesting the examination,[5] Dr. Stice concluded that Pogany was not "so mentally incompetent as to be unable to understand the proceedings against him or properly assist in his own defense." The report is set out in full in the margin.[6] Upon

3. At oral argument counsel stated that his objection to commitment was based on medical advice which had indicated that any such commitment would be detrimental to appellant's course of psychiatric treatment.

4. "THE COURT: Well, if we have a hearing he will either be committed or tried. That is the only alternative.
"MR. LERNER: I would think there is one other possibility, Your Honor.
"THE COURT: What, that I will allow him to run around loose as long as some doctor comes in here and says that he doesn't think he can answer quite as well as he should?
"MR. LERNER: Well, I would think that if the—
"THE COURT: Well, you have that in mind. When your doctor comes in here—*and I will have the hearing;* I won't commit him although I think I should. *We will set this down for a hearing* and *I will notify you later in the day, when I check my schedule, so that you will have time to get whatever medical experts you need,* but after that is concluded he will either be committed to an institution or he will go to trial.
"Is that clearly understood?" (Emphasis added).

5. The text of the United States Attorney's letter to Dr. R. E. Strange, Dr. Stice's superior at the Hospital, reads as follows:
"On June 11, 1970 the above-named defendant was indicted by a federal grand jury sitting in Philadelphia, for failing to obey a lawful order of Selective Service Local Board No. 334 in Bristol, Pennsylvania directing him to report for and submit to induction into the Armed Forces on December 8, 1969. The defendant was arraigned on August 25, 1970 and pleaded not guilty. The case was scheduled for trial on January 4, 1971 before the Honorable Harold K.

Wood. In December, defendant's counsel filed a Motion for a Determination of the Competency of the Defendant to Stand Trial pursuant to Title 18, United States Code, Section 4244. That section provides that in the event such a motion is filed, the Court must order a hearing to determine the mental competency of the defendant to stand trial.
"The questions which I would kindly ask that you answer after having examined the defendant are as follows:
"1. Do you believe that the defendant is presently insane or otherwise so mentally incompetent as to be unable to understand the proceedings against him or properly assist in his own defense? Kindly state the reasons for your answer.
"2. Would you recommend that the defendant be committed to a suitable hospital or other facility for a period of time not exceeding 30 days in order that the defendant undergo a more thorough examination to determine the existence of a mental disorder which would make him unable to understand the proceedings against him or to assist in his own defense."

6. Dr. Stice's report was as follows:
CONSULTATION REPORT
"The questions stated in your letter, RE: LCB:FRW:jmc, #70–0010, of 14 January 1971 are answered as follows:
"On the basis of this single outpatient interview, we do not believe the defendant is presently so mentally incompetent as to be unable to understand the proceedings against him or properly assist in his own defense.
"Mental status examination revealed a clean young man dressed in a sweat shirt, jeans, and tennis shoes who appeared his stated age. He was oriented in all spheres. He was cooperative and able to communicate verbally without difficulty. His thinking was goal-directed but he was occasionally circumstantial. He demonstrated a grin which was inappropriate to

receipt of a copy of Dr. Stice's report on February 11, defense counsel renewed his motion for a competency hearing. That motion was denied and trial commenced on March 11, 1971.

■ It is unnecessary to comment at any length on the proposition that a defendant convicted while incompetent has been denied due process. *See e. g.*, Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966); Bishop v. United States, 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835 (1956).[7]

■■ Congress through Section 4244 has assured an accused that if his mental capacity to cope with the complexities of trial is in doubt, there will be a judicial determination of that issue. If made in good faith and not patently frivolous a Section 4244 motion requesting a psychiatric examination must be granted. United States v. Irvin, 450 F.2d 968 (9th Cir. 1971); United States v. Knohl, 379 F.2d 427 (2nd Cir. 1967); United States v. Walker, 301 F.2d 211 (6th Cir. 1956). Section 4244 provides that where the psychiatric report indicates a present state of mental incompe-

tence, a hearing *must* be conducted for judicial determination of that issue.[8] In applying § 4244, an accused is considered to have the mental capacity to stand trial if he "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding —and whether he has a rational as well as factual understanding of the proceedings against him." Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960).

As indicated above, rather than appointing an examining psychiatrist and ordering him to report directly to the Court, the entire matter was placed in the hands of the Assistant United States Attorney. The record clearly reveals, however, that the Assistant United States Attorney and defense counsel as well as the Court were under the impression that the examination would be undertaken for the purpose of providing the Government's expert an opportunity to examine Pogany prior to the hearing. There is no indication that this examination was to be performed to aid the Court in its determination of Pogany's competency as required by Section 4244.[9]

---

the content of the interview. No memory impairment for either remote or recent events was elicited. When questioned about the possibility of a trial and further consequences, he demonstrated a passive manner in which he answered that he had not and did not like to think about the trial or the consequences. No pseudo-perceptions were observed but he reported numerous incidents in which he thought people had talked to him. No delusions were elicited but he reported that he enjoyed daydreaming most of the time. He stated that work interfered with this and probably was why he did not like to work. He refused to interpret six common proverbs other than to say, "They are all weird and related to people somehow."

"Insight was nil. Judgment was inadequate to the present life situation, however; he was cooperative and able to understand the proceedings and able to assist in the interview.

"Because of the above-noted evidence of mental illness, we do feel the defendant could benefit from a commitment to a suitable hospital or other facility for a period of time not exceeding 30 days in

order that he could undergo more thorough examination and treatment.

"R. B. STICE
LCDR MC USN
Department of Psychiatry"
We note that the introductory paragraph contains the exact wording employed by the Government in its letter to Dr. Strange. See *supra*, n. 5.

7. See also Sanders v. Allen, 69 App.D.C. 307, 100 F.2d 717 (1938): "The trial and conviction of a person * * * incapable of making a defense violates certain immutable principles of justice which inhere in the very idea of free government." 100 F.2d at 720.

8. "If the report of the psychiatrist indicates a state of present insanity or such mental incompetency, in the accused, the court *shall* hold a hearing." 18 U.S.C. § 4244 (emphasis added), supra n. 3.

9. The discussion between counsel and the Court was as follows:
"THE COURT: And as soon as I can fix a time that is convenient, why, Mr. Meistering, as a matter of fact, will

As noted above, Government counsel subsequently wrote to the Chief of the Neuro-Psychiatry Division of the Naval Hospital requesting the examination, noting that a hearing would be held, see n. 7, *supra*. Dr. Stice's examination took place on January 14, 1971, the report submitted immediately thereafter to the United States Attorney who only then forwarded it to the trial judge.

■ Initially, we conclude that the Stice examination cannot be deemed a proper substitute for a Section 4244 examination. Fairness requires that the examining psychiatrist pursuant to a § 4244 motion be an officer of the Court and responsible neither to the defense nor the prosecution. United States v. Theriault, 440 F.2d 713 (5th Cir. 1971); In Re Harmon, 425 F.2d 916, 918 (1st Cir. 1970). In United States v. Theriault, the Court stated:

"Sec. 4244 concerns examination to determine if the defendant is competent to stand trial. The court appoints a psychiatrist who examines the accused and reports to the court.

*Rule 28 [Fed.R.Crim.P.] authorizes the court to appoint its own expert witness, who is expected to be neutral and detached. He advises the parties of his findings. . . . The impartial expert appointed under Rule 28 at the request of defense counsel to inquire into defendant's sanity is not a prosecution witness but the court's witness. . . ."* 440 F.2d at 715 (emphasis added).[10]

■ The necessity for such a requirement is all the more apparent when in situations such as in the instant case, the trial judge denies a full hearing and bases his determination of competency on a single psychiatric examination. An advocacy role by the Section 4244 examining psychiatrist is simply and obviously inconsistent with the statute's intent to provide a fair and impartial determination of an accused's ability to stand trial.

After having apparently granted the request for a competency hearing, the Court reversed itself upon receipt of Dr. Stice's report. Since the hearing was

call you when the date of that hearing is fixed. And that is going to be it.

"MR. LERNER: I will await a call from Mr. Meistering.

"THE COURT: You await a call from Mr. Meistering, but you better be looking for a doctor in the meantime.

"MR LERNER: I have the doctor. I have already spoken to the doctors who will testify and it is merely a question of having notice sufficiently in advance so they can schedule their other commitments.

"THE COURT: Tell your doctor he will probably have four or five days' notice.

"MR. GALLI (the Asst. U. S. Attorney): *Will we have an opportunity to have our expert examine the defendant in the meantime?*

"THE COURT: In advance?

"MR. GALLI: Yes, Your Honor.

"MR. LERNER: Your Honor, we have no objection to having him ex-

amined by any psychiatrist on an outpatient basis.

"THE COURT: How much time do you want to do that?

"MR. GALLI: Well, I don't know, Your Honor. I would request a week or two weeks.

"THE COURT: Oh, now, I am not going to delay this thing. You are trying to delay it now.

"MR. GALLI: No, Your Honor.

"MR. SUTTON: A week will be enough.

"MR. GALLI: A week will be sufficient, Your Honor.

"THE COURT: You have him examined within a week. That is in advance of the hearing. We will fix the hearing sometime after a week from today.

"MR. GALLI: Very well, Your Honor. (emphasis added).

10. See also 2 C. Wright, Federal Practice and Procedure, § 452 (1960).

not held, it is impossible for us to ascertain with any degree of certainty whether Dr. Stice submitted his report as an officer of the Court or as the Government's expert witness.[11] We do note, however, that at trial, Dr. Stice was the Government's sole witness on the question of appellant's sanity at the time the offense occurred and we must therefore conclude that there is a likelihood that the examination was conducted primarily in preparation for his appearance as a Government witness. Since there is this probability that the report was prepared for the prosecution's benefit, we must conclude that appellant was not provided with the safeguards envisioned by Congress when it enacted Section 4244.[12]

■ Having determined that the Section 4244 examination was erroneously conducted, we must now address ourselves to the proper remedy. In Dusky v. United States, *supra*, the Supreme Court concluded that the only effective way to correct an erroneous Section 4244 determination of competency was to reverse the conviction and remand to the District Court for a competency hearing and a new trial if the accused is found competent. Accord, Meador v. United States, 332 F.2d 935 (9th Cir. 1964).

Accordingly, the judgment will be reversed and the case remanded to the District Court where Pogany will be given a mental examination conducted pursuant to Section 4244 and consistent with this opinion. In the event he is found competent to stand trial, he will be given a new trial.

---

11. Although no objection was made by defense counsel to the procedure employed by the Court, the record indicates that his agreement was predicated upon his understanding that a hearing would in fact be scheduled and that the examination at issue was to give the Government's expert an opportunity to examine Pogany prior to that hearing.

12. See generally, 1949, U.S.Code Cong. Serv., p. 1928.