**Sherrill Gary BRINKLEY, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

Nos. 73–1444, 73–1445.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 11, 1973.

Decided April 9, 1974.

Rehearing Denied May 14, 1974.

Rehearing En Banc Denied July 12, 1974.

506

Henry J. Osterloh, Little Rock, Ark., for appellant.

Wilbur H. Dillahunty, U. S. Atty., and John Forster, Asst. U. S. Atty., Little Rock, Ark., for appellee.

Before BRIGHT and STEPHENSON, Circuit Judges, and STUART,* District Judge.

BRIGHT, Circuit Judge.

Sherrill Gary Brinkley appeals from a jury verdict in the United States Dis-

---

* WILLIAM C. STUART, District Judge, Southern District of Iowa, sitting by designation.

trict Court for the Eastern District of Arkansas, finding him guilty of one count of attempted bank robbery in violation of 18 U.S.C. § 2113(a)(2), and one count of conspiracy to commit bank robbery in violation of 18 U.S.C. § 371. Appellant alleges six grounds of error, including three relating to his unsuccessful assertion of the insanity defense.

The evidence at trial revealed that a series of extortionate telephone calls were made to banks in the Little Rock, Arkansas, area during September and October of 1972 in which the caller threatened to detonate bombs in bank buildings or in the homes of bank officers if various demands for money were not met. A tape recording of one of these calls was obtained by a bank security officer, and bank employees and officers identified the voice as that of the man who had also made the other calls. The voice of the caller was identified by Brinkley's ex-wife and by several close friends as being that of appellant. Testimony of two indicted co-conspirators identified appellant as a participant with them in the theft of dynamite, as the man who ordered one of them to wait at a specific location for a "drop" of money from a bank, and as the man who placed a "package" beneath the window of a bank officer's home at a location which was subsequently the scene of a violent explosion. Other witnesses supplied miscellaneous pieces of corroborating evidence.

In his trial strategy, appellant sought to rely on the defense of not guilty by reason of insanity at the time of the commission of the offense. In this regard, he alleges the following errors: (1) the trial court refused to grant appellant's pretrial request for appointment of an independent psychiatrist to examine the appellant at government expense pursuant to 18 U.S.C. § 3006A(e)(1); (2) the trial court refused to give a jury instruction on insanity; and (3) the Government failed to carry its burden of proof regarding appellant's sanity beyond a reasonable doubt.

## I.

In United States v. Schultz, 431 F.2d 907 (8th Cir. 1970), this court examined the denial of a request for psychiatric examination within the framework of 18 U.S.C. § 3006A(e) of the Criminal Justice Act [now § 3006A(e)(1)] which provides:

> Counsel for a person who is financially unable to obtain investigative, expert, or other services necessary for an adequate defense may request them in an ex parte application. Upon finding, after appropriate inquiry in an ex parte proceeding, that the services are necessary and that the person is financially unable to obtain them, the court * * * shall authorize counsel to obtain the services.

In *Schultz*, we held that it was error for the trial court to refuse appointment of an independent psychiatrist where evidence indicated that within the recent past the defendant had acted bizarrely, had been hospitalized as a mental patient on prior occasions, and had been diagnosed as a mental patient. 431 F.2d at 911–912. In attempting to enunciate some general standard for determining when expert services would be "necessary" under § 3006A(e), we stated:

> No standard can be arbitrarily articulated covering all circumstances under which an accused demonstrates his entitlement under the Act to services of experts to present an adequate defense. Trial counsel, of course, makes his request in the context of pretrial investigation of the circumstances surrounding an alleged crime. The discretion possessed by the district court would appear to be somewhat narrower than its power under Fed.R.Crim.P. 17(b), the rule by which a federal district court may authorize a financially pressed defendant to produce witnesses necessary for trial through subpoena at governmental expense. In evaluating a 17(b) request, the trial court may consider the nature and effect of the evidence proposed by the defendant—whether material or not, whether cumulative in

nature or not. The trial court possesses a broad discretion to grant or deny a 17(b) application. * * * In our view, the courts ought to apply a more lenient standard in determining the need for services of experts in preparation for trial than that applied under 17(b). [431 F.2d at 909–910 (citations omitted).]

We further stated:

While a trial court need not authorize an expenditure under subdivision (e) for a mere "fishing expedition", it should not withhold its authority when underlying facts reasonably suggest that further exploration may prove beneficial to the accused in the development of a defense to the charge. Considering the purpose of § 3006A(e) of the Criminal Justice Act to provide the accused with a fair opportunity to prepare and present his case, the application of the accused's counsel for such services must be evaluated on a standard of reasonableness. [431 F.2d at 911 (footnote omitted).]

Since our decision in *Schultz*, other circuits have considered this problem and endeavored to provide additional guidance to trial courts faced with such requests.

In United States v. Taylor, 437 F.2d 371 (4th Cir. 1971), the Fourth Circuit noted that, by making expert psychiatric assistance available, § 3006A(e)(1):

goes beyond other provisions relating to determinations of mental illness in enabling a defendant and his attorney to have expert medical assistance throughout the preparation and presentation of an insanity defense.

Once counsel has concluded that these services are necessary to enable him properly to evaluate and present possible defenses, the statute entitles him to secure them for his client on a showing of necessity. [437 F.2d at 377 (footnote omitted).]

The court concluded that while "the required quantum of this showing has not often been the subject of review", it was manifest that expert services were required where there was evidence of the defendant's extensive history of mental disturbance, his record of impulsive behavior; his own desire for treatment, and previous expert medical opinion to the effect that he was "psychotic" and lacked sufficient internal controls over his conduct. 437 F.2d at 378. The court remanded the case for an independent psychiatric examination with orders to the trial court to grant a new trial if the report indicates the existence of "a substantial question of criminal responsibility." 437 F.2d at 379.

The Fifth Circuit in United States v. Theriault, 440 F.2d 713 (5th Cir. 1971), emphasizing that standards under § 3006A(e)(1) "are not susceptible of arbitrary articulation but can best be developed on a case by case basis", *id.* at 715, remanded that case for a new trial since no *ex parte* hearing had been held and the trial record clearly indicated the need for an expert psychiatric witness to aid the defense. In a special concurrence, Judge John Minor Wisdom examined the legislative history of the Criminal Justice Act as well as relevant constitutional policies and concluded as follows:

I would read the statute, therefore, as requiring authorization for defense services when the attorney makes a reasonable request in circumstances in which he would independently engage such services if his client had the financial means to support his defenses. The trial judge should tend to rely on the judgment of the attorney, who has the primary duty of providing an adequate defense. Such reliance is recommended by the difficulty of requiring the trial judge to take an adversary view of the case. * * * Additionally it avoids forcing the defendant to reveal private information to the court in order to support the request for such services. Further it comes close to putting the indigent defendant in the same position as a non-indigent defendant, where the defense attorney would determine whether to engage the services.

There is a limitation contained in the statute. A maximum amount of $300 is authorized for each expert. This explicit limitation reinforces our interpretation of the requirement of necessity. Congress chose an expenditure limit rather than requiring defendants to demonstrate unusual need for defense services. [440 F.2d at 717 (citations omitted).] [1]

Judge Wisdom's views have since been adopted by the Ninth Circuit in United States v. Bass, 477 F.2d 723, 725 (9th Cir. 1973), which holds that § 3006A(e)(1):

requires the district judge to authorize defense services when the defense attorney makes a timely request in circumstances in which a reasonable attorney would engage such services for a client having the independent financial means to pay for them.

In United States v. Chavis, 155 U.S. App.D.C. 190, 476 F.2d 1137 (1973), the District of Columbia Circuit undertook an elaborate effort to "delineate the precise parameters of the requirement" concluding:

The answer to this question of when psychiatric assistance is "necessary" depends upon two variables. First, a judge should consider the likelihood that an insanity defense is warranted. Obviously a court should not be required to appoint a psychiatrist if there is absolutely no reason to think that such a plea would be successful. A trial judge's evaluation of this factor could, among other things, be based upon a prior medical history of psychological imbalance, testimony by those acquainted with the defendant regarding his actions and apparent mental state, or the judge's own evaluation of the defendant's demeanor. Second, the judge should consider whether the defendant has received sufficient psychiatric assistance from other sources; an adequate defense under some circumstances could be prepared based on the findings, assistance and testimony of a court-appointed psychiatrist. The issue does not revolve around the technical fact of under what provision a psychiatrist is appointed, but rather the substantive issue of whether the defendant received the assistance "necessary to an adequate defense." Such assistance could come from the testimony and aid of court-appointed psychiatrists, independent charitable institutions, or even a concerned independent psychiatrist who is donating his time to the ends of justice. These and other sources of psychiatric assistance might, under some circumstances, provide a defendant with the expert assistance needed to prepare "an adequate defense" and thereby render an appointment under § 3006A "unnecessary." [476 F.2d at 1143.]

The court vacated the defendant's conviction and remanded the case for a supplementary evidentiary inquiry to determine if any prejudice resulted from the denial of an independent psychiatric examination, since a Government psychiatrist had examined the defendant and testified on his behalf. The court went on to detail specifically the areas and issues that were necessary to be explored in the supplementary hearing to determine if the quality of the defense had been rendered "inadequate." *Id.* at 1144–1145.

■■ Turning to the case at bar and with the benefit of having the entire trial record before us, we conclude that the trial court should have granted defendant's request for an independent psychiatric examination. Although

---

1. In 1970, Congress by Pub.L. 91–447 § 1(a) amended § 3006A(e) so that additional expenditures beyond the $300 limit could be authorized by the court if the services were "of an unusual character or duration." 18 U.S.C. § 3006A(e)(3) (1970), amending 18 U.S.C. § 3006A(e) (1964). In addition, a new provision was added to permit attorneys to obtain assistance costing up to $150 without prior court approval. 18 U.S.C. § 3006A(e)(2), amending 18 U.S.C. § 3006A(e) (1964). *See* 1970 U.S.Code Cong. and Admin.News 3982.

there is merit to the elaborate evaluative process espoused by the D. C. Circuit in *Chavis*, we think a more direct approach is preferable. We agree with Judge Wisdom's concurring opinion in *Theriault*, adopted by the Ninth Circuit in *Bass*, that the trial judge should tend to rely on the judgment of the defense attorney if the latter "makes a reasonable request in circumstances in which he would independently engage such services if his client had the financial means to support his defenses." 440 F.2d at 717. *See* Comment, "Developing Standards for Psychiatric Assistance for Indigent Defendants under the Criminal Justice Act," 59 Iowa L.Rev. 726 (1974). This is nothing more than the "reasonableness standard" which we applied in United States v. Schultz, *supra*, 431 F.2d at 911–912.[2]

The legislative history of the 1970 amendments to § 3006A support this view. The Senate Subcommittee, which studied procedures followed under the Act, stated:

> Thus, we heard of attorneys who suspected their clients of being mentally disturbed, but had no evidence of this suspicion to present to a judge as a justification for his authorizing expenditures for psychiatric examinations. (We are unaware of whether the local district court's attitude toward subsection (e) authorizations was sufficiently hostile to justify these attorneys' timidity about requesting authorization.) . . . Consequently, we feel that the bar should be bold in seeking subsection

(e) authorizations, and the bench should be tolerant in entertaining and relatively generous in granting them. [Subcomm. on Constitutional Rights of the Senate Comm. on the Judiciary, 90th Cong., 2d Sess., Report of the Criminal Justice Act in the Federal District Courts at 220–21 (Comm. Print 1969).]

*See also* Note, "The Indigent's Right to an Adequate Defense: Expert and Investigational Assistance in Criminal Proceedings," 55 Cornell L.Rev. 632 (1970); Kutak, "The Criminal Justice Act of 1964," 44 Neb.L.Rev. 703 (1965).

Although motion for an examination and for a continuance were not filed until the day set for trial—apparently because of a change in trial counsel necessitated by the serious illness of original appointed counsel—the trial court properly conducted an *ex parte* hearing as required by § 3006A(e)(1). At that hearing, appellant took the stand and testified that he had in the past undergone psychological counselling for over a year, that he was a frequent user of the drug LSD (d-Lysergic acid diethylamide and tartrate), that he suffered "flashbacks," and that he had been knocked unconscious and hospitalized as a result of an automobile accident. Appellant's mother then took the stand and testified that appellant's personality had recently changed and that "he does need some sort of help."

In overruling the request for psychiatric assistance, the trial court stated:

> On the basis of the record, the Court doesn't see any indication that this

2. Our decision in United States v. Maret, 433 F.2d 1064 (8th Cir. 1970), is no authority to the contrary, for there appellant presented no grounds to justify an additional independent psychiatric examination since appellant had already received two examinations at the Federal Medical Center at Springfield, Missouri, including one to determine competency at the time of commission of the crime. Both reports showed a diagnosis of competency and referred to the patient only as a "sociopathic personality." *See* Comment, "The Criminal Justice Act of 1964— Defendant's Right to an Independent Psychiatric Examination," 28 Wash. & Lee L.Rev. 457 (1971). We recognize, of course, that there is a substantial functional distinction between a § 3006A examination and one conducted either under 18 U.S.C. § 4244 at the request of the United States Attorney or under Fed.R.Crim.P. 28 at the request of the court. But since, as the Fifth Circuit stated in *Theriault*, "the court has a responsibility to prevent abuses of appointive processes," 440 F.2d at 715 n. 3, the results of a § 4244 or Rule 28 examination may be highly pertinent in determining the reasonableness of counsel's request for a § 3006A(e)(1) appointment.

young man was mentally incompetent at the time of his initial offense. He may well have been taking drugs at the time. There is some indication in the report that he was. This, of course, does not indicate any incapacity to stand trial at the present time or any defense of insanity for lack of capacity at the time of the offense. I find nothing to indicate from the evidence and reports that he was mentally incompetent at the time.

■ It is true that mere addiction to narcotics raises no inference of psychiatric disorder. *See* Bailey v. United States, 386 F.2d 1 (5th Cir. 1967); Heard v. United States, 121 U.S.App.D. C. 37, 348 F.2d 43 (1964). Yet it is also true that there may be cases where "prolonged and extensive use of narcotics has substantially impaired the capacity to control behavior," and "such evidence might compel a verdict of not guilty by reason of insanity." Green v. United States, 127 U.S.App.D.C. 272, 383 F.2d 199, 201 (1967); *see generally* Gaskins v. United States, 133 U.S.App.

D.C. 288, 410 F.2d 987 (1967). Similarly, we have held it proper to submit the issue of insanity and criminal responsibility to the jury where the defense has introduced evidence of severe, chronic alcoholism and its possible physiological effects on the brain such as "blackouts." *See* United States v. Leeper, 413 F.2d 123 (8th Cir. 1969); Mason v. United States, 402 F.2d 732 (8th Cir. 1968).

In light of the changing state of medical knowledge regarding hallucinogens, we think that the district court may have underestimated the unique and potentially dangerous impact that prolonged use of LSD appears to have on the psychological state and behavioral patterns of some users. *See* Lunter, "The Effect of Drug-Induced Intoxication on the Issue of Criminal Responsibility," 8 Crim.L.Bull. 731 (1972); Comment, "LSD—Its Effect on Criminal Responsibility," 17 DePaul L.Rev. 365 (1968). Testimony presented by the defense at trial drew attention to the existence of such effects.[3] Defense counsel should have been allowed to explore the

---

3. At the trial, Dr. Edwin Barron, a physician in family practice, testified for the defense in a general way as to the possible effects that LSD might have on an individual. He had not personally examined appellant and he did not undertake to express any opinion on defendant's competency at the time of his alleged criminal conduct. His testimony in part read:

Q Can LSD be dangerous?
A Yes, it certainly can.
Q What are some of the effects?
A The effects of LSD, while there can be very wild moods, swings, there can also be fits of depression. There can be a manic behavior manifested. There can also be behavior exhibited so far as to result in suicide. And there have been medical articles published that have indicted LSD in suicide cases.
Q Are there other catastrophic reactions? And what are they?
A LSD has been described as having catastrophic results. I will just refer to you from a pharmacologic text I have here: "The catastrophic reactions to LSD cause a severe disruption of psychological defense mechanism and they do cause repressions and denial in an individual precariously defended against confrontation of conflict material." * * *

Q Can a use. of LSD be on a long trip without taking LSD?
A Yes, he certainly can. In the text referred to by Dr. Goff, the estimate there is 25 to 50 trips; that after 25 to 50 trips on LSD, or taking LSD, that a person can be maintained or sustained in a permanent trip; that he finds that it's no longer necessary at all to take LSD. He doesn't have to have the LSD. And this is the type of thing that is feared especially in experimentation with the drug.
* * *
Q Doctor, I am going to ask you about a term now, and you will have to explain the term. What are flashbacks?
A Flashbacks are events that occur that are characterized with LSD, but they can occur with some other drugs. An individual can be sitting here just as we are now and, with no warning, no apparent precipitating cause, there will be a behavioral change, and he will experience the same thing that he experienced, or similar to what he experienced at the time that he took this drug. The greatest danger of the flashback that I have been personally aware of was when an airline pilot, particularly a co-pilot, had taken LSD some twenty months previously and had a flashback during a landing, I think, of a jet

possible effects of LSD on appellant and the issue of whether these effects might amount to insanity under our definition of that defense in United States v. Frazier, 458 F.2d 911 (8th Cir. 1972). *See* State v. Hall, 214 N.W.2d 205 (Iowa Sup.Ct., 1974) (LeGrand, J., dissenting). Under the circumstances of this case, to deny appellant expert services that could reasonably be described as necessary to assure an adequate defense constitutes error. The question remains as to the proper remedy under the circumstances here. We are not dealing with an insanity defense resting upon the existence of a record of mental illness prior to the commission of the crime as in the *Schultz* case. Rather the defense presents a narrow question whether prior use of LSD produced such impairment or derangement of defendant's mental capacity to amount to insanity.

■ The best resolution of a similar matter is the one adopted by the Fourth Circuit in United States v. Taylor, *supra*, where the court held:

> The error here does not necessarily require that the judgment be set aside. It is entirely possible, despite the indications of mental difficulties, that a thorough examination would not have provided counsel with any meaningful assistance in preparing an insanity defense; it might even have led him to conclude that there was, in fact, no basis for one. In that event, the error would be harmless. Accordingly, we will temporarily suspend the judgment now on appeal and remand the case to the district court with directions to appoint a reputable private psychiatrist to assist defense counsel pursuant to 18 U.S.C. § 3006A (e). The psychiatrist should be in-

structed to examine Taylor thoroughly and for so long as he deems it necessary in order to reach an informed opinion as to his mental condition. On completion of his examination he will provide a report of his examinations and his conclusions to the court and to counsel. If the report indicates the existence of a substantial question of criminal responsibility, and if defense counsel represents that he intends to rely on it on retrial, the judgment will be vacated and a new trial granted. Otherwise, the judgment of conviction will stand affirmed. [437 F.2d at 379 (footnotes omitted).]

We direct the district court to afford appellant similar relief.

II.

Appellant alleges two other grounds of error related to his unsuccessful insanity defense, but on the trial record as it stands we find no merit in his contentions. The errors alleged—in the trial court's failure to instruct on insanity and in the Government's failure to carry its burden of proving defendant's sanity beyond a reasonable doubt—hinge upon the defendant's adducing some slight evidence supporting the claim of insanity. The question of the sufficiency of this evidence is for the court. *See* Blake v. United States, 407 F.2d 908, 911 (5th Cir. 1969). We can find no fault with the trial court's determination that defendant failed to make the requisite showing to justify an instruction on insanity and an imposition on the Government to prove defendant's sanity. We note that the trial court did give a lengthy and detailed charge on the effect of drug use on criminal intent.[4]

aircraft. This basically is a broad description of what the flashback is. But the flashback can be precipitated by other causes.

Q What, for instance, Doctor?

A Stimulants can precipitate the flashback. If an individual has taken LSD, say, a year or two years ago, or even longer—again this is unknown as to the precise time—and then took a diet pill, or amphetamine, it has been shown that amphetamines will produce the flashback.

4. The trial court charged the jury as follows:

You are further told that the defendant contends, in addition to the denials just mentioned, that during the overall period with which you are concerned he was using drugs extensively, particularly the drug commonly known as LSD, and that at times, he contends, he was under the influence of the drug and at other times was suffering from after effects or repercussions from its use, and that the impact

Whether expert psychiatric testimony would have altered defendant's showing is a matter best left to be determined by the trial court in the hearing ordered above.

### III.

■■ We have also examined appellant's other contentions and find them without merit. There was no abuse of discretion by the trial court in denying appellant's motion for a continuance made on the day of trial. *See* United States v. Harrelson, 477 F.2d 383 (5th Cir. 1973). *See generally* Stamps v. United States, 387 F.2d 993 (8th Cir. 1967). Nor was the appellant prejudiced by one witness' brief, hearsay account of comments by one co-conspirator about "other crimes." The trial judge immediately instructed the jury to ignore the remark except to the extent that they may be statements of a co-conspirator having to do with the alleged conspiracy on trial; hence there is no error. *See* Phelps v. United States, 160 F.2d 858, 873 (8th Cir. 1947).

Finally, we have scrutinized the record on this appeal to evaluate appellant's claim that there was insufficient evidence of a conspiracy to convict him. Testimony of co-conspirators as well as a variety of circumstantial evidence makes it plain that there was sufficient evidence before the jury to uphold the verdict.

### SUMMARY

Because of our holding in part I of this opinion, the judgment now on appeal is suspended and the case is remanded for an independent psychiatric examination and for a hearing before the district court upon the psychiatrist's report of that examination. If defendant can show prejudice resulting from the denial of expert services at his trial and if defense counsel represents that he will rely upon the psychiatrist's testimony on any retrial, the judgment should be vacated and a new trial granted. Otherwise the judgment will stand affirmed.

Remanded.

---

of that drug use during the overall period in question was such that he was not acting rationally and was mentally incapable of forming any intent to extort or attempt to extort money from a bank or to conspire with others to do so. I shall now instruct you to some extent in connection with that contention.

Let me say, first, that before you may find the defendant guilty in either of these two cases, you must be convinced by the evidence beyond a reasonable doubt that he acted wilfully; that is to say, that he acted intentionally and deliberately and with a conscious purpose to violate the law or to act in disregard of the law. Now, it is not a defense to a criminal charge that the act or acts in question was or were committed, if at all, while the defendant was under the influence of a drug voluntarily consumed by him, or while he was suffering from the after effects or repercussions, or flashbacks, as I believe they've been called, of or from a drug so consumed by him. However, if the act or acts charged as a crime or as crimes are such acts as to require the acting party to think rationally or to form a specific intent, and if his faculties are so impaired by drug use that he cannot think or act rationally or form a specific intent to do the act or acts in question, then he is not responsible criminally for the act or

acts charged against him. And where the question arises, as it has done in this case, then the burden is on the Government to prove by the evidence and beyond a reasonable doubt, among other things, that the defendant had the capacity to think and act rationally and that he did so act, and that he acted, if at all, wilfully, as that term has been defined to you. That is, that he acted intentionally and deliberately, and with a conscious purpose to violate the law or to act in disregard of the law.

Now, it is for you to say from the evidence whether by reason of drug use, including the after effects thereof, the defendant's intellect, the reasoning power of his mind, was so impaired that he could not rationally conceive a design or form an intent to extort money from a bank by threats, intimidations or violence, or to conspire to do so, or to knowingly and wilfully undertake to carry out such a design or intent, if there was one. And, if you find affirmatively from the evidence that the defendant's faculties were impaired to the extent that I have indicated, or if you have any reasonable doubt whether the defendant's faculties were impaired to the indicated extent, then it would be your duty to acquit the defendant.

## ORDER ON REHEARING

For the most part, matters presented on the Government's petition for rehearing may be considered by the district court in determining whether the results of the independent psychiatric examination will justify vacating the judgment. We repeat what we said in the main opinion: that a new trial should be granted if the psychiatrist's report of examination, read against the background of the evidence at the trial, discloses the existence of a substantial question of criminal responsibility.

We think a word need be added for the guidance of the district court and appellant's counsel relating to proper physical arrangements for the independent psychiatric examination in light of appellant's present incarceration: the function of making these arrangements falls within the discretion of the district court.

We deny the petition for rehearing.