Matthew H. HOLTZEN, III, Appellant,

v.

UNITED STATES of America, Appellee.

No. 82–2017.

United States Court of Appeals,
Eighth Circuit.

Dec. 15, 1982.

Jim D. Spears, Fort Smith, Ark., for appellant.

W. Asa Hutchinson, U.S. Atty., Larry R. McCord, Asst. U.S. Atty., Fort Smith, Ark., for appellee.

Before FLOYD R. GIBSON, Senior Circuit Judge, and BRIGHT and McMILLIAN, Circuit Judges.

## PER CURIAM.

Matthew H. Holtzen appeals his jury conviction on a two-count indictment for conspiracy to manufacture amphetamine in violation of 21 U.S.C. § 846 (1976) and the manufacture of amphetamine in violation of 21 U.S.C. § 841(a)(1). We affirm.

### I.

The evidence presented at trial indicated that in late November 1981, Holtzen, with the assistance of coconspirators Gary Daniels and Billy Lee, assembled a clandestine laboratory in the kitchen of a house occupied by Lee and Rosemary Smith. Holtzen, Daniels, and Lee subsequently operated the laboratory to produce amphetamine. The amphetamine was stored in two jars which were hidden inside a bag of dog food in Lee's and Smith's house. Some bottles and cans which had been used in the laboratory were discarded in a trash pit located a short distance from the house. In January, 1982, Rosemary Smith's mother-in-law discovered the two jars of amphetamine and gave them to a local deputy sheriff, who in turn took the jars to the Arkansas Crime Lab where their contents were analyzed and determined to be amphetamine. Shortly thereafter, Arkansas Division Investigation Unit Agent Anderson located certain of the items previously discarded in the trash pit next to the house occupied by Lee and Smith.

On March 5, 1982, two local law enforcement officers responded to a disturbance call at Holtzen's home in Elm Springs, Arkansas. Holtzen and his girlfriend had been embroiled in a heated argument during which two gunshots were fired. When the officers arrived, the argument subsided, Holtzen gave the officers a gun, and the officers arrested Holtzen for being a felon in the possession of a firearm. The officers subsequently conducted a search of Holtzen's house and his car, seizing a black and red trunk lying on the backseat of the car. The trunk contained several items of chemical glassware. Later in March, 1982, Agent Anderson took possession of Holtzen's trunk, after having learned that a trunk of similar characteristics had been used to transport the equipment employed in the manufacture of amphetamine at the residence of Lee and Smith. Both Lee and Smith later identified the trunk as the same one which contained the chemicals and glassware used to manufacture amphetamine at their residence.

On April 23, 1982, an arrest warrant was issued charging Holtzen with the manufacture of amphetamine and Agent Anderson arrested Holtzen at his residence. Subsequent to the arrest, Agent Anderson searched Holtzen's house and discovered, among other things, a booklet entitled "The Whole Drug Manufacturer's Catalog," which was later introduced at Holtzen's trial, over Holtzen's objection.

Holtzen was indicted along with his coconspirators Lee and Daniels on June 2, 1982. Lee and Daniels subsequently entered into plea agreements whereby they pled guilty to conspiracy to manufacture amphetamine and testified against Holtzen at his trial.

### II.

On appeal, Holtzen first argues that the district court [1] abused its discretion in admitting into evidence the booklet entitled "The Whole Drug Manufacturer's Catalog," claiming that under Fed.R.Evid. 403 the booklet's prejudicial effect substantially outweighed its probative value.

This argument is without merit. According due deference to the trial judge who saw and heard the evidence, the substantial

---

1. The Honorable H. Franklin Waters, United States District Judge, Western District of Arkansas.

probative value of the booklet is reflected by the fact that it contains a chapter on the synthesis of methamphetamine, which is a derivative of amphetamine—the controlled substance which Holtzen was charged with manufacturing. The booklet also contains a subheading titled "Kitchen Chemistry & Bathroom Dope." In the instant case, Holtzen and his coconspirators Daniels and Lee used the kitchen of Lee's and Smith's residence to operate the clandestine drug laboratory.

Second, Holtzen contends that the district court clearly erred in failing to suppress the booklet as the product of an allegedly nonconsensual, warrantless search of his home on April 23, 1982. At the suppression hearing, Holtzen testified that after Agent Anderson arrested him on April 23, 1982, Anderson announced that he had a search warrant and would "tear apart" Holtzen's house unless Holtzen consented to a search of the house. In response, Holtzen showed Anderson where various items were located, including the booklet in question. Holtzen also testified that he was knowledgeable and experienced regarding consensual searches. Agent Anderson testified at the suppression hearing that he neither told Holtzen that he had a search warrant nor threatened Holtzen in any way; instead, he merely requested and received Holtzen's permission to search the desk where the booklet was found.

█ According due deference the district court's decision to credit Anderson's testimony over Holtzen's, we do not believe that the district court clearly erred in finding that, based upon "the totality of the circumstances," Holtzen's consent was voluntary. *United States v. Mendenhall,* 446 U.S. 544, 557–58, 100 S.Ct. 1870, 1878–1879, 64 L.Ed.2d 497 (1978). However, even assuming arguendo that the district court erred in failing to suppress the booklet, such error was harmless beyond a reasonable doubt because the evidence of Holtzen's guilt was overwhelmingly established by the trial testimony of three eyewitnesses—Rosemary Smith, and Holtzen's two coconspirators Lee and Daniels—who testified that Holtzen participated in the manufacture of amphetamine at the residence of Smith and Lee in late November, 1981. *See Harrington v. California,* 395 U.S. 250, 254, 89 S.Ct. 1726, 1728, 23 L.Ed.2d 284 (1969); *Chapman v. California,* 386 U.S. 18, 22, 24, 87 S.Ct. 824, 827, 828 (1966).

Third, Holtzen argues that the trunk and chemicals and glassware seized on March 5, 1982 should have been excluded because they were seized as a result of an allegedly illegal search of his car. More specifically, Holtzen contends that the district court clearly erred in finding that he voluntarily consented to the search of his car. At the suppression hearing, Holtzen was the only one who testified regarding the search and seizure on March 5, 1982. Holtzen testified that the two officers who arrived at his house in response to a disturbance call immediately arrested him for being a felon in the possession of a firearm. After the arrest, the officers announced that they smelled marijuana and conducted an exhaustive search of Holtzen's house. While leaving the house, the officers ordered Holtzen to open his car. Holtzen unlocked the car and the officers seized a trunk lying on the backseat of the car. The trunk was later identified by two government witnesses, Rosemary Smith and coconspirator Billy Lee, as the same trunk which contained the chemicals and glassware used in the clandestine drug manufacturing laboratory at the residence of Smith and Lee in late November 1981.

█ Assuming that the district court erred in failing to suppress the trunk as the product of an unlawful, nonconsensual search and seizure, such error was clearly harmless beyond a reasonable doubt. None of the contents of the trunk were introduced into evidence. Also, as mentioned above, Holtzen's guilt was overwhelmingly established by the untainted trial testimony of three eyewitnesses who testified that Holtzen participated in the manufacturing of amphetamine at the residence of Smith and Lee. *Harrington,* 395 U.S. at 254, 89 S.Ct. at 1728; *Chapman,* 386 U.S. at 22, 24, 87 S.Ct. at 827, 828.

Holtzen finally argues that the district court abused its discretion in refusing to grant him a continuance in order to obtain three alibi witnesses. At his arraignment on June 8, 1982, Holtzen was notified that his trial was set for August 5, 1982. Holtzen notified the government about one of the witnesses on June 18, 1982 and notified the government about the other two witnesses on July 30, 1982. However, subpoenas for the three witnesses' presence at the trial were not issued until August 2, 1982, just three days prior to trial. At the conclusion of the first day of his trial, Holtzen moved for a continuance because the three witnesses had not yet been served with subpoenas and were unavailable to testify. Holtzen claimed that one witness would testify to having possession of some of Holtzen's chemical glassware during November and December of 1981, and a second witness would testify as to Holtzen's whereabouts on November 28 and 29, 1981. As to the third witness, Holtzen conceded that he neither knew what her testimony would be nor knew whether she could ever be located. The district court, noting that the subpoenas on the three witnesses were not timely issued, denied the request for a continuance on the basis that the proffered testimony of the witnesses was not necessary or essential to Holtzen's defense on the charges contained in the indictment. After reviewing the record, we do not believe that the district court abused its discretion in failing to grant Holtzen's mid-trial continuance. *Brinkley v. United States,* 498 F.2d 505, 513 (8th Cir.1974).